CLARK, C. J., concurs with opinion. *Page 170 
The prayer of the complaint is that the defendants be enjoined from printing and distributing the forms required by the provisions of the acts of 1917 and 1919, and from carrying out any of the provisions of said acts upon the ground that they are unconstitutional and void. This legislation is known as the absentee voters law, being ch. 23, Public Laws 1917, reenacted and brought forward in Art. 8, ch. 95, of the Consolidated Statutes of North Carolina, as amended by ch. 322, Public Laws 1919. It is claimed that the law is unconstitutional because it is repugnant to Art. VI, sec. 2, and Art. VI, sec. 6, of the State Constitution.
Sec. 2 provides that the voters shall have resided in the State for 2 years, in the county 6 months, and in the precinct, ward, or other election district, in which he offers to vote, 4 months next preceding the election. Sec. 3 declares that every person offering to vote shall be at the time a legally registered voter.
Sec. 6 declares that all elections by the people shall be by ballot, and all elections by the General Assembly shall be viva voce.
The question presented and ably argued by the learned counsel on both sides is one of grave importance to the consideration of which we have given the most careful study. It is never wise for the judiciary to disregard the organic law which the people in their sovereign capacity have seen fit to adopt for the security of public and private rights. No rule of construction is better settled, both upon principle and authority, than that legislative enactments are presumed to be constitutional until the contrary is shown. It is only when they plainly conflict with some provision of the Constitution that they should be declared void. The power of declaring laws unconstitutional should always be exercised with extreme caution, and every doubt resolved in favor of the statute. As has been well said, these rules are founded on the best of reasons, because, while the supreme judicial power may interfere to prevent a legislative, and other departments, from exceeding their powers, no tribunal has yet been devised to check the encroachments of the judicial power itself. Twitchell v.Blodgett, 13 Mich. 151; Sharpless v. Mayor of Philadelphia, 21 Pa., 162. *Page 171 
It is not contended that there is any provision of the Federal Constitution which in any way interferes with the power of the Legislature of this State to enact the laws which are attacked by the plaintiff. Therefore, it is properly conceded that the acts in question constitute a valid exercise of legislative power unless they contravene our State Constitution.
Somewhat similar statutes, known as absent voters acts, have been enacted in some thirty-odd States of this Union. In some of the States the law applies only to those absent from their county or precinct, but still within the State. The laws of 21 States allow voting blanks to be filled out and mailed to the proper State officers from anywhere in the United States. It is needless to refer to the varying provisions of these statutes. They vary in the procedure prescribed, but in the main they provide for the casting and reception of ballots at the places where the absent electors are, and for the return of the ballots to, and the counting and canvassing by the proper election officials of the respective counties of which they are residents. Some of these statutes refer exclusively to voters who are absent in the military or naval service of the United States. Some statutes have been held unconstitutional on the ground that they violate constitutional provisions designating the place of holding elections and requiring an elector to vote in the district or precinct in which he resides. These statutes have been decided constitutional by the House of Representatives of the Congress of the United States so far as they affect the election of members of that body. Baldwin v. Trobridge, 2 Bartl. Cont. Election Cases, 46.
It is held that it is clearly within the province of a State Legislature to enact statutes of this description if the State Constitution is silent on the place of voting. Morrison v. Springer, 15 Iowa 304; Lehman v.McBride, 15 Ohio State, 573; State v. Main, 16 Wis. 398.
The plaintiff contends that the statute violates the provision of our Constitution which provides that elections by the people shall be by ballot, arguing that this means a secret ballot in all elections. We admit that voting by ballot, as distinguished from viva voce voting, means a secret voting, and that the elector in casting his ballot has the right to put it in the box and to refuse to disclose for whom he voted, and that he cannot be compelled to do so. But this privilege of voting a secret ballot has been held to be entirely a personal one. The provision has been generally adopted in this country for the protection of the voter, and for the preservation of his independence, in the exercise of this most important franchise. But he has the right to waive his privilege and testify to the contents of his ballot. The voter has the right at the time of voting voluntarily to make public his ballot, and its contents in such case may be proven by the testimony of those who are *Page 172 
present. Public policy requires that the veil of secrecy shall be impenetrable unless the voter himself voluntarily determines to lift it.Boyer v. Teague, 106 N.C. 625; McRary on Elections (3 ed.), 305-306; Crolly Con. Lim. (7 ed.), 912.
A secret ballot is not compulsory so far as the voter is concerned, for our statute provides that the ballot may be deposited for the voter by the registrar, or by one of the judges of election, or by the voter himself if he so chooses. Con. Stat., 5979.
We think the position that the statute conflicts with sec. 6, Art. VI, is untenable.
We will consider the other contention of the plaintiff that the statute is repugnant to sec. 2 of the said article. The statute provides that in all primaries and elections that any elector who may be absent from the county in which he is entitled to vote, or physically unable to attend for the purpose of voting in person, etc., shall be allowed to vote as hereinafter provided. The statute then provides that no one shall vote who is not duly registered and qualified to vote under the laws of the State. It provides for sending out blank certificates and envelopes for absent voters. It also provides that the registrar shall hold the said letters unopened until 3 p. m. on the day of election, and that he shall then open the envelopes received from such absent voters, and that such votes, if found to be regular, shall be deposited and counted in the same manner as if the voter had been present in person. Sec. 5 of the act provides that:
"The right to vote of any absent voter shall be subject to challenge in the same manner as if the elector proposing to vote were present in person, and if found entitled to vote under the provisions of this act, and the laws of the State, every such vote so received shall be deposited and counted in the same manner as if the voter had been present and cast his vote in person."
It is contended that the words, "in which he offers to vote," in sec. 2, and the words, "every person offering to vote," in sec. 3, necessarily implies that the voter must be present in person at the polls and tender his ballot. This position was maintained by counsel for plaintiff with much force, and we must admit that the question is perplexing and involved in doubt. But we think the language of the Constitution is susceptible of a fair interpretation which will sustain the statute, in which case it is our duty to uphold it and give to the law the benefit of the doubt. The party who undertakes to pronounce a law unconstitutional takes upon himself the burden of proving beyond any reasonable doubt that it is so. Nothing should have the effect of avoiding a statute duly enacted but a direct collision between its provisions and the Constitution. That collision is not so clear as to justify us in setting aside a statute, which *Page 173 
is the law in a majority of the States of the Union, and, so far as we can find, has not been contested in recent years.
The statute was enacted in 1917, and its primary purpose was to enable our soldiers to cast their votes by mailing them to the proper officials.
The soldiers and sailors, who are absent from home in the country's cause are not disfranchised citizens, and their right to exercise the elective franchise should be preserved and the ways and means provided.
We admit this question has been decided against our view in the case ofTwitchell v. Blodgett, 13 Mich. 127, and upon language similar to that used in our Constitution. But in that case there is a very powerful dissenting opinion by Chief Justice Martin, in which he holds that the words used do not require the personal presence of the elector at the polls. In that opinion the learned judge forcibly says: "Can we, upon any sound judicial opinion, hold that an election in the army is any the less a legal one, or the soldiers less entitled to the privilege of electors than persons remaining at their homes, if the Legislature is endowed with the power to fix the place and prescribe the manner of balloting and of canvassing votes — I think not."
The judge again says: "If a viva voce vote were required, it would be impossible to avoid the conclusion that the framers of the Constitution intended that votes be cast personally, and not otherwise; but a ballot may be deposited as the Legislature sees fit to authorize."
The fact that this law originated from extraordinary emergency, and was not contemplated by the framers of the Constitution, can make no difference. If the power resides in the legislators, they may exercise it and apply it to all voters, whether soldiers or not. A power not limited or withheld abides in the people, and in such case the Legislature, like Parliament, is omnipotent.
The case of Bourland v. Hildreth, 26 California, 162, cited by plaintiff, is not a direct authority against our views. The Constitution of California, as held in that case, not only prescribes the qualifications of electors, but also the place within which the act of voting shall be performed, and it cannot be performed elsewhere. But the value of that case as an authority is greatly weakened by the strong dissenting opinion ofChief Justice Sanderson, generally acknowledged to be a very great judge.
The case of Chase v. Miller, 41 Pa. State, 404, differs very materially from the one under consideration. The substance of that decision, as we read it, was that under the Constitution of Pennsylvania the right of a soldier to vote is confined to, and must be exercised, in the election district where he resided when he entered the military service, and that *Page 174 
the Legislature could not authorize a military commander to form an election district and hold an election therein.
The election laws, which attempted to confer the right of suffrage upon Federal soldiers absent on military service, and which were passed upon in some of cases cited, are wholly unlike, in principle as well as in detail, the North Carolina absent voters act. Judge Woodard thus describes these laws in above cited case: "They permit the ballot box, according to the court below, to be opened anywhere, within or without our State, with no other guards than such as commanding officers, who may not themselves be voters nor subject to our jurisdiction, may choose to throw around it; and it invites soldiers to vote where the evidence of their qualifications is not at hand; and where our civil police cannot attend to protect the legal voter, to repel the rioter, and to guard the ballots after they have been cast."
The Connecticut and New Hampshire cases, cited by plaintiff, plainly have no bearing on this controversy. Their Constitutions recognized, and we believe still recognize, the old New England electors' meeting. The right of suffrage was conferred upon those present and voting at the meeting.
This meeting is commonly called a town meeting, and is a very ancient institution in some of the New England States.
The history of these meetings is given in the Connecticut case. Opinion of Judges, 30 Conn. 591, and 44 N. H., 633.
These cases all dealt with statutes of certain States of the United States engaged in the Civil War conferring the privilege of voting upon their soldiers then absent in the army.
The votes were to be cast without any registration at the camps in which they were located; they were collected by certain designated officers to be sent to a State officer, and by him distributed among the various localities of the State.
Our absentee voters act is a very different enactment. No one can vote under it unless he is registered, and is otherwise a qualified voter. The elector must select his ballots and fill up and sign the form sent him, and seal them up in an envelope sent for the purpose. It must be addressed to proper official, and opened by him at 3 p. m. of election day. Every safeguard is provided to prevent fraud or mistake.
These laws are a very great public convenience, and serve a very useful purpose or they would not have been adopted in 33 States of the Union.
They have been sustained by the highest Courts of Iowa, 15 Iowa 304; Ohio, 15 Ohio State, 573; and Wisconsin, 16 Wis. 398.
Passing to a consideration of the text of our Constitution, we think the context of Art. VI indicates that the personal presence of the voter is not required in order to cast his ballot. *Page 175 
An offer to vote may be made in writing, and that is what the absent voter does when he selects his ballots and attaches his signature to the form, and mails the sealed envelope to proper official. The section requires only that he must make that offer in the precinct where he has resided, etc. We see no reason why an offer to vote may not be made in writing as well as by word of mouth. An offer to buy or sell may be made in writing, and why not an offer to vote? There is nothing immoral in such transaction, and it violates no principle of public policy.
That the Constitution makers did not mean that the words "offer to vote" should necessarily imply the personal presence of the voter is indicated by sec. 4. In that section the language is "every person presenting himself
for registration." Those words plainly require the personal presence of the voter. If the personal presence of the voter had been required by sec. 2, those who framed the article could easily have used the words, "in which he presents himself to vote." Such language would have put the meaning beyond doubt. At the time that section of the Constitution was adopted, in 1900, absentee voting laws had been passed in many States, and in a few cases they had been before the Courts for construction. The convention doubtless had knowledge of them, and did not deem it advisable to preclude the General Assembly in its discretion from enacting such statute whenever it was deemed wise to do so.
An act of the General Assembly should not be set aside by implication. A constitution should not receive a technical construction as if it were an ordinary instrument or statute. It should be interpreted so as to carry out the general principles of the Government, and not defeat them.
In the language of Chief Justice Gibson, cited in Twitchell v. Blodgett,supra, "When we construe a constitution by implication of such rigor and inflexibility as to defeat the legislative regulations, we not only violate accepted principles of interpretation, but we destroy the rights which the Constitution intended to guard."
Affirmed.