# Lancaster City's Fifth Ward Election.

*Election law—Absent voters—Constitutional law—Presumption —"Offer to vote"—Secrecy in voting—Act of May 22, 1923, P. L. 309—Maxims—Expressio unius, etc.*

1. Where a statute is assailed as violative of the fundamental law of the state, it is necessary that it be examined in the light of the controlling constitutional provisions, and presumptively it is valid.

2. The Act of May 22, 1923, P. L. 309, giving "absent voters" a right to vote is unconstitutional.

3. The words "offer to vote" as used in the Constitution of Pennsylvania (Amendment of 1901, article VIII, sec. 1) mean that the voter is to present himself, with proper qualifications at the time and place appointed, and to make manual delivery of the ballot to the officers appointed by law to receive it.

4. The legislature can confer the right to vote only upon those designated by the fundamental law, and subject to the limitations therein fixed.

5. The fact that the Constitution limits absent voting to soldiers, indicates an intent to exclude all other classes, on the principal that the expression of an intent to include one class excludes another.

6. It seems that the scheme of procedure fixed by the Act of May 22, 1923, trenches upon the constitutional provision "that secrecy in voting be preserved."

Argued May 20, 1924. Appeal, No. 325, Jan. T., 1924, by Ira H. Bare, respondent, from order of Q. S. Lancaster Co., Quarter Sessions Journal, page 184, in election contest in case of Lancaster City's Fifth Ward Election. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition in election contest. Before HASSLER, J.

The opinion of the Supreme Court states the facts.

Order entered declaring election of Leonard L. Lewis to office of select councilman of Fifth Ward of Lancaster City. Ira H. Bare, respondent, appealed.

*Error assigned* was order, quoting it.

*John E. Malone,* for appellant.—The Act of May 22, 1923, P. L. 309, is not unconstitutional: Morrison v. Springer, 15 Ia. 304.

The fact that section 6, of article VIII, expressly permits qualified voters in actual military service to exercise the right of suffrage as if they were present at their usual places of elections does not impliedly prohibit all other electors from exercising that privilege.

An act of the legislature is not to be declared void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt: Com. v. Hyneman, 242 Pa. 244; Likins's Petition, 223 Pa. 456; Winston v. Moore, 244 Pa. 447; Wasson v. Woods, 265 Pa. 442.

*F. Lyman Windolph,* with him *Harry L. Raub, Jr.,* and *D. F. Magee,* for appellee, cited: Chase v. Miller, 41 Pa. 403; Page v. Allen, 58 Pa. 338; McCafferty v. Guyer,

59 Pa. 109; Com. ex rel. v. Conyngham, 65 Pa. 76; Guldin v. Schuylkill Co., 149 Pa. 210.

OPINION BY MR. JUSTICE SADLER, July 8, 1924:

At the November election of 1923, the citizens of the Fifth Ward of Lancaster City balloted for a select councilman. The returns from the local board showed Lewis, the Democratic and coalition candidate, to be credited with a total of 869 votes, while his Republican opponent was noted as having received 861. Later, under the provisions of the Act of May 22, 1923, P. L. 309, the proper officer made known the result of the count of the "absent voters," which added three to the total of the first named, and twenty for the latter, thus apparently causing the election of Bare. To contest this decision, a petition was presented to the court of quarter sessions, in which the validity of the legislation referred to was attacked, its unconstitutionality being urged on many grounds, and it was asked that the additional ballots cast by mail be rejected in making the final computation. This contention was sustained below, and a certificate of election directed to be issued to Lewis. From the decision rendered, this appeal was taken.

An act of assembly being assailed here as violative of the fundamental law of the State, it is necessary that it be examined in light of the controlling constitutional provisions, for presumptively it is valid. The statute in question provides an elaborate system for the issuing, marking and recording of the ballot of a qualified voter "who by reason of his duties, business or occupation [may be] unavoidably absent from his lawfully designated election district, and outside of the county of which he is an elector, but within the confines of the United States," on the day of holding any election. More than thirty of the states of the Union now have absentee voting laws of similar character,—usually limited in the grant of privilege to those in military service,—and, in most cases, authorized by special constitutional pro-

vision: 14 A. L. R. 1256. Whether such legislation can be sustained in Pennsylvania depends upon the wording of our Constitution, in the interpretation of which we are aided by consideration of what has been decided previous to its adoption.

In 1790, amended in 1838, it was provided by the organic law that "in elections by the citizens every white freeman of the age of twenty-one years, having resided in the State one year, and in the election district, where he offers to vote, ten days immediately preceding such election, and within two years paid a state or county tax, which shall have been assessed at least ten days before the election, shall enjoy the right of an elector." Later, in 1839, the legislature enacted a general law regulating the conduct of elections (July 2, 1839, P. L. 519), and, by sections 43 to 50, directed that soldiers in actual service could have their votes recorded in the manner therein prescribed. The question of the right to exercise this special privilege was brought before this court in a contest from Luzerne County in 1861, and the adverse determination then made is controlling now, unless there has been some change in the fundamental law which makes necessary a different conclusion.

At that time it was said, in part: "To 'offer to vote' by ballot, is to present oneself, with proper qualifications, at the time and place appointed, and to make manual delivery of the ballot to the officers appointed by law to receive it. The ballot cannot be sent by mail or express, nor can it be cast outside of all Pennsylvania election districts and certified into the county where the voter has his domicil. We cannot be persuaded that the Constitution ever contemplated any such mode of voting, and we have abundant reason for thinking that to permit it would break down all the safeguards of honest suffrage. The Constitution meant, rather, that the voter, in propria persona, should offer his vote in an appropriate election district, in order that his neighbors might be at hand to establish his right to vote if it were chal-

lenged, or to challenge if it were doubtful": Chase v. Miller, 41 Pa. 403, 419.

The same view was taken in many other states during the Civil War period, where like constitutional requirements existed: Twitchell v. Blodgett, 13 Mich. 127; Bourland v. Hildreth, 26 Cal. 161; Day v. Jones, 31 Cal. 261; Opinion of the Judges, 30 Conn. 591; Opinion of the Judges, 37 Vt. 665; Opinion of the Justices, 44 N. H. 633. A divergent idea was expressed in Iowa, based on the difference in language describing qualifications of electors: Morrison v. Springer, 15 Ia. 304. Later, opinions expressing the same thought as declared by this court, in the case referred to, have been handed down, where the soldier vote was not involved (In re Opinion of Justices (N. H.), 113 Atl. 293; Clark v. Nash, 192 Ky. 594, 234 S. W. 1, 19 A. L. R. 304), though a contrary conclusion was reached in North Carolina: Jenkins v. State Board of Elections, 180 N. C. 169, 104 S. E. 346, 14 A. L. R. 1247.

In Pennsylvania, following the ruling in Chase v. Miller, supra, an amendment was passed (1864), permitting the receipt of the ballots of those in military service, and this provision was carried into the Constitution of 1874 (article VIII, sec. 6). The right of the legislature to fix the status of electors was next the subject of review when Chief Justice THOMPSON discussed the validity of the so-called "Registry Act" of April 4, 1868, P. L. 30. "For the orderly exercise of the right resulting from these qualifications, it is admitted that the legislature must prescribe necessary regulations, as to the places, mode and manner, and whatever else may be required, to insure its full and free exercise. But this duty and right inherently imply that such regulations are to be subordinate to the enjoyment of the right, the exercise of which is regulated. The right must not be impaired by the regulation. It must be regulation purely, not destruction. If this were not an immutable principle, elements essential to the right itself might be

invaded, frittered away, or entirely exscinded under the name or pretence of regulation, and thus would the natural order of things be subverted by making the principle subordinate to the accessory. To state is to prove this position. As a corollary of this, no constitutional qualification of an elector can in the least be abridged, added to, or altered, by legislation or the pretence of legislation. Any such action would necessarily be absolutely void and of no effect. We hold, therefore, what indeed was not expressly denied, that no regulation can be valid which would have the effect to increase the district or state residence, prior to the time of an offer to exercise the right of an elector, or which would impose other or additional taxation or assessments than those provided in the Constitution": Page v. Allen, 58 Pa. 338, 347.

When we come to the Constitution of 1874, there is found,—in so far as the qualifications of voters are concerned, except as to such persons as are in actual military service,—practically the same provisions as theretofore controlling. As amended in 1901, article VIII, section 1, reads: "First. He shall have been a citizen of the United States at least one month. Second. He shall have resided in the State one year (or, having previously been a qualified elector or native-born citizen of the State, he shall have removed therefrom and returned, then six months) immediately preceding the election. Third. He shall have resided in the election district where he shall offer to vote at least two months immediately preceding the election." Further, it is provided by section 4, "All elections by the citizens shall be by ballot or by such other method as may be prescribed by law; Provided, That secrecy in voting be preserved."

It will be noticed that the "offer to vote" must still be in the district where the elector resides, the effect of which requirement is so ably discussed by Justice WOODWARD in Chase v. Miller, supra. Certain alterations are made so that absent voting in the case of soldiers is permissible.

This is in itself significant of the fact that this privilege was to be extended to such only. "In construing particular clauses of the Constitution it is but reasonable to assume that in inserting such provisions the convention representing the people had before it similar provisions in earlier constitutions, not only in our own State but in other states which it used as a guide, and, in adding to, or subtracting from, the language of such other constitutions the change was made deliberately and was not merely accidental": Com. ex rel. v. Snyder, 261 Pa. 57, 63. The legislature can confer the right to vote only upon those designated by the fundamental law, and subject to the limitations therein fixed: McCafferty v. Guyer, 59 Pa. 109. The latter has determined those who, absent from the district, may vote other than by personal presentation of the ballot, but those so permitted are specifically named in section 6 of article VIII. The old principle that the expression of an intent to include one class excludes another has full application here. White, in his work on the Constitution (p. 360), succinctly sums up the proposition controlling this case when he says: "The residence required by the Constitution must be within the election district where the elector attempts to vote, hence a law giving to voters the right to cast their ballots at some place other than the election district in which they reside [is] unconstitutional."

Other objections to the validity of the act now under consideration have been raised, but any detailed discussion is unnecessary. It may well be argued that the scheme of procedure fixed by the Act of 1923, for the receipt, recording and counting of the votes of those absent, who mail their respective ballots, would end in the disclosure of the voter's intention, prohibited by the amendment of 1901 to section 4 of article VIII of the Constitution,—undoubtedly the result if but one vote so returned for a single district. Though this provision as to secrecy was likely added in view of the suggestion of

the use of voting machines, yet the direction that privacy be maintained is now part of our fundamental law.

However laudable the purpose of the Act of 1923, it cannot be sustained. If it is deemed necessary that such legislation be placed upon our statute books, then an amendment to the Constitution must be adopted permitting this to be done. For the reasons stated, the only assignment of error is overruled.

The decree is affirmed; costs to be paid by the County of Lancaster.