57 P.(2d) 293

### THOMPSON v. SCHEIER.
### No. 4135.

Supreme Court of New Mexico.

May 7, 1936.

E. C. Warfel and David Chavez, Jr., both of Santa Fé, for appellant.

Fred C. Stringfellow, of Raton, for appellee.

BRICE, Justice.

On motion for rehearing the original opinion is withdrawn and the following substituted:

This is an appeal from a judgment of the district court in favor of appellee, Ralph T. Thompson, in a special proceeding brought by him as contestant, against appellant A. J. Scheier, as contestee, to contest the election of appellant to the office of sheriff of Harding county, N. M. Judgment on the pleadings was entered for appellee on his motion.

The board of county commissioners of Harding county, N. M., after canvassing the votes of a general election declared A. J. Scheier, the appellant, elected sheriff of that county by a vote of 1,189 to 1,180 for the appellee. The computation made by the district court resulted in a finding that 1,192

votes were cast for appellant, including 61 absentee ballots, and 1,187 votes for appellee. The district court held the 61 absentee ballots cast for appellant invalid, in that chapter 127 of the New Mexico Session Laws of 1933 (the absent voters' law) is unconstitutional. He therefore deducted the 61 votes from appellant's total of 1,192, leaving 1,131 votes for appellant to 1,187 for appellee.

A number of questions presented are unnecessary to a decision as the constitutional question must be determined and is decisive of the case. That part of section 1 of article 7 of the State Constitution material to this suit and section 5 of the same article are as follows:

"Section 1. Every male citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election * * * shall be qualified to vote at all elections for public officers. * * * The legislature shall have the power to require the registration of the qualified electors as a requisite for voting, and shall regulate the manner, time and place of voting. The legislature shall enact such laws as will secure the secrecy of the ballot, the purity of elections and guard against the abuse of elective franchise. Not more than two members of the board of registration and not more than two judges of election shall belong to the same political party at the time of their appointment."

"Section 5. All elections shall be by ballot, and the person who receives the highest number of votes for any office shall be declared elected thereto."

A proposed amendment to the Constitution of New Mexico was voted upon at the general election held in November, 1920. It (article 7, § 6, submitted in 1920) provided that qualified electors of the state, absent in the military or naval service of the United States or the state, could vote for state officers, presidential electors, and Representatives in Congress. In 1927 (Laws 1927, c. 41, § 333), legislation was enacted providing for the absent voting of any qualified voter not present in his district on election day. Because of the abuse of the law by unscrupulous politicians who gathered in absentee ballots (which under that statute could be deposited in the ballot box on election day by any agent selected by the voter), the statute was amended in 1933 (chapter 127, N. M. Session Laws 1933) providing for all absentee ballots to be returned with safeguards that prevented the fraud practiced under the act amended. Section 1 of the amended act provides, in substance, that any qualified voter, unavoidably absent at a point more than 40 miles distant from the polling place in his home precinct on a general election day, can mail or cause to be mailed to the county clerk an application for a ballot to be voted at such election. Upon the filing of such application the county clerk is required to enter the name of the applicant in a book to be known as the absentee ballot book, together with the time of its receipt, and to note such appli-

cation upon the registration book of the precinct where such applicant is registered. Thereupon, such ballot is issued and given in person to the applicant, or mailed to him by registered mail to be delivered to addressee only, and a record made thereof. If the voter is within the state but more than 40 miles distant from his voting precinct, he can exhibit to the judges of the election of such precinct his absentee ballot, mark the same, and deliver it to the judges of such voting district, who, in the presence of the elector and each other, are required to seal it in an envelope addressed to the county clerk and county chairmen of the Republican and Democratic parties, sign a certificate printed thereon and return it to the elector, who is required to send it by registered mail to addressees. If the elector is out of the state, he is required to appear before an officer authorized to administer oaths, mark the ballot in secret, and place it in an envelope provided for such purpose, in the presence of such officer (who is required to execute a certificate printed on the back of the envelope) sign the envelope and mail by registered mail in the manner heretofore mentioned. That part of section 4 of the act, material to this case, reads as follows:

"Sec. 4. That Section 41-336, New Mexico Statutes Annotated, 1929, Compilation, be and the same is hereby amended to read as follows:

" '41-336. Absent-Voter's Ballot—Delivery to Judges of Election. On the date the board of county commissioners meet as a county canvassing board, in the manner provided by law, the county clerk and the Republican county chairman and the Democratic county chairman and on no other day, shall jointly receive from the post office all absentee ballots transmitted to them by registered mail and no others, and shall thereupon deliver said ballots in said envelopes, so sealed to the county canvassing board, and which board shall call out the names of such absent voters in the presence of the clerk and said two chairmen and said county canvassing board shall open the envelope, take out the ballot, and without unfolding or exhibiting the same deposit said ballot in a ballot box provided for that purpose and the clerk shall note upon the book provided for the reception of the applications for absentee ballots, and on the application itself, "voted," unless a challenge shall be interposed against such vote and sustained. For the purpose of interposing such challenge, the county chairman of each political party shall be given all the rights, powers and duties of a challenger, as provided by law.

" 'No absentee ballots, issued, delivered, voted or transmitted in any manner than hereinabove provided, shall be received, cast, counted or canvassed.

" 'The county canvassing board shall then open the ballot box wherein all absentee ballots have been deposited in the manner provided hereinabove, and shall, in the presence of the two chairmen aforesaid and the county clerk and one additional person designated by the chairman of each political party, proceed to count and tally the ballots and certify the result of said count on

a form provided by the county clerk for said purpose, which form shall be substantially similar to the form provided on the last page of the poll books and shall thereafter proceed to canvass the returns in the manner provided by Section 41-337 of the New Mexico Statutes Annotated, Compilation of 1929, including in their canvass the count as shown by their certificate as hereinabove."

Does the act in question constitute the board of county commissioners "judges of election" in the sense these words are used in section 1 of article 7 of the Constitution, which provides: "Not more than two judges of election shall belong to the same political party at the time of their appointment." If so the act is plainly unconstitutional.

By the term "judges of election," the framers of the Constitution no doubt had in mind "judges of election," as provided for in the New Mexico Election Code existing at the time. They conducted the election, heard and acted upon challenges, and with the assistance of the clerks counted the ballots, entering the same on the poll books to which they certified and delivered the ballots with the poll books, etc., to the board of county commissioners, who, as a canvassing board, canvassed the result of the election. Under the act being considered, the ballots are delivered to the board of county commissioners who call out the names of the voters and deposit them in the ballot box, and in the meantime hearing any challenges that may be offered. After the ballots are cast, that board counts and tallies the ballots, certifies to the result substantially as provided for the judges of election to certify thereto on the poll books. The act says they "shall thereafter proceed to canvass the returns in the manner provided by section 41-337 [41-347?] of the New Mexico Statutes Annotated Compilation of 1929, including in their canvass the count as shown by their certificate as hereinabove."

Unless the board of county commissioners are "judges of election," then none are provided for by this statute. It provides for the challenging, counting, and returning of ballots substantially as though the election had been held in an election district, except it is all done by the board of county commissioners.

The Legislature evidently intended that the members of the several boards of county commissioners should be "judges of election," as the heading of section 41-336 reads: "Absent Voter's Ballot—Delivery to Judges of Election." We therefore hold that the members of the board of county commissioners are in fact "judges of election," and as more than two may belong to the same political party at the time of their appointment, chapter 127, N.M.Session Laws of 1933 (amending section 41-336, N. M.Stats.Ann.,Comp.1929), violates section 1 of article 7 of the New Mexico Constitution, and is void.

Does the fact that the act in question provides that absentee ballots shall be delivered at the county seat to the board of county commissioners and by that board placed in a separate ballot box to be pro-

vided for that purpose, instead of being cast in the precinct in which the voter resides, run counter to the Constitution?

If that part of section 1 of article 7 of the Constitution which reads, "Every male citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election * * * shall be qualified to vote at all elections for public officers. * * * The legislature shall have the power to require the registration of the qualified electors as a requisite for voting, and shall regulate the manner, time and place of voting," only fixes the qualification of voters, then the power to "regulate the manner, time and place of voting" would authorize the Legislature to provide for the casting of the absentee ballots at the county seat, and this alone would not be constitutionally objectionable; but if in addition to fixing the qualification of voters that section of the Constitution also fixes the place of voting in the precinct of the voter's residence, then the legislative act in question is unconstitutional.

This question has brought conflicting decisions from the courts since Civil War days, and nearly all decisions have been by divided courts.

The statutes of New Mexico in force at the time the Constitution was written fixed the qualifications of a legal voter as follows: "He shall be a citizen of the United States of the age of twenty-one years, shall have resided in the territory six months, in the county wherein he offers to vote, three months, and in the precinct, thirty days, immediately preceding the election." Section 3, chap. 26, N.M.Session Laws 1868 (section 1703, N.M.Comp.Laws 1897).

They also provided that all votes should be by ballot, and each voter was required to deliver his own vote (ballot) in person. Laws 1851, p. 196 (section 1999, Code 1915). A voter could only be registered in the precinct of his residence, section 10, ch. 105, N.M.Session Laws 1909 (section 2055, N.M.Code 1915), and only a qualified voter so registered could vote, unless an unregistered voter tendered to the election judges an affidavit of himself and two witnesses proving that he was qualified to vote in the precinct where he offered to vote. Chapter 26, N.M.Session Laws 1868, as amended by section 1, chap. 64, N.M.Session Laws 1903 (section 1963, N.M.Code 1915). The board of county commissioners selected the places in each precinct where the elections were to be held. Section 5, ch. 105, N.M. Session Laws 1909 (section 1978, N.M.Code 1915). These statutes remained in force after the adoption of the Constitution, except, of course, as to any that may have been inconsistent therewith.

In 1869, a statute was enacted permitting a qualified voter to vote in another precinct of his county on certificate that he was legally registered in the precinct of his residence, and stating the necessity for his absence therefrom. Section 1, ch. 49, N.M.Session Laws 1869 (section 1709, Comp.L.1897). This statute was probably

repeated by section 12 of chapter 135 of the N.M.Session Laws of 1889 (section 1702, Comp.L.1897). It was the only absentee voters law enacted prior to the adoption of the Constitution, though a number have been enacted since, beginning with the first legislative assembly after the adoption of the Constitution.

Section 1, article 7 of the Constitution of Michigan (1850) provides that: "No citizen or inhabitant shall be an elector, or entitled to vote at any election, unless he shall be above the age of twenty-one years, and has resided in this State three months, and in the township or ward in which he offers to vote, ten days next preceding such election."

In People v. Blodgett, 13 Mich. 127, the court held in substance that this provision of the Constitution required that each elector should in person cast his ballot in the township or ward in which he resided, and therefore held a law permitting soldiers to vote wherever they might be violated this section of the Constitution. This decision, like practically all on this subject, was by a divided court, but the fact that Judge Cooley was one of the majority gives their opinion additional weight. The question is stated by the court as follows: "It is claimed by the relator that offering to vote at an election in a township or ward, does not prevent casting the vote beyond the State limits, while the respondent insists that the act of the elector must be done within his own township."

Judge Cooley in his opinion stated:

"Counsel for the relator contend that it only prescribes the qualifications of electors, leaving the conditions under which they shall exercise their right to be fixed by the Legislature. * * *

"I have no hesitation in holding that when the time, place, and manner of holding elections are not prescribed by the constitution, they are within the discretion of the Legislature, and the reception of votes from persons actually out of the election districts, or even of the States, may be allowed by statute."

He agrees that under the Iowa Constitution, the Supreme Court of that state in Morrison v. Springer, 15 Iowa, 304, wherein it held the absentee statute of that state constitutional, was correct. The difference, he said, lay in the fact residence was required in the Michigan Constitution to be "in the township or ward in which he offers to vote," whereas the Iowa Constitution 1857 (article 2, § 1) provided that he should be a resident "of the county in which he claims his vote."

Judge Cooley then states: "But when we come to put upon the phrase 'offers to vote' the same meaning given by the Court in Iowa to the words 'claims his vote,' we shall find that this meaning, applied to this law, will not sustain it. For there is no provision in this law anywhere that 'the soldier's vote shall be received and have effect in the township or ward of his residence.' The votes are never to be returned to the township or ward, and never have effect there. As the law does not apply to

township elections, no township officers can be elected under it. The votes are canvassed by State, county and district canvassers, but never by township or ward canvassers."

This is substantially the same condition we find here. There is no provision for the ballots to become effective as if cast in the precinct of the voter's residence.

In Chase v. Miller, 41 Pa. 403, an act was passed by the Pennsylvania Legislature, providing for voting by persons in the military service of the United States in or outside the state of Pennsylvania. The Constitution of Pennsylvania (Const.1838, art. 3, § 1) fixed, among others, the qualifications of a voter as follows: "Every white freeman of the age of twenty-one years, having resided in this State one year, and in the election-district where he offers to vote ten days immediately preceding such election."

It was held that the voter must vote in person in the district of his residence; that this was a test of the right of suffrage.

Section 1 of article 2 of the Constitution of California (1849) is as follows: "Every white male citizen of the United States, and every white male citizen of Mexico, who shall have elected to become a citizen of the United States, under the treaty of peace exchanged and ratified at Queretaro, on the 30th day of May, 1848, of the age of twenty-one years, who shall have been a resident of the State six months next preceding the election, and the county or district in which he claims his vote thirty days, shall be en-titled to vote at all elections which are now or hereafter may be authorized by law."

In Bourland v. Hildreth, 26 Cal. 161, the Supreme Court of that state held an absentee voters statute unconstitutional; that the intent of this section of the Constitution was to fix the place where the voter should vote in person. In the opinion of Judge Sawyer, concurring, it is stated: "At the time of the adoption of our Constitution, the universal practice was for electors to vote in the county, district, town or precinct in which they resided, and, as a general rule, this manifestly should be so. It was, doubtless, not contemplated at that time, that any great emergency would arise wherein the very existence of the Nation would be at stake, as at present, and where a large portion of the electors would be absent, assisting in quelling a rebellion; hence, it did not occur to the framers of that instrument to make an exception in such a contingency, and none was provided."

The Supreme Court of Iowa reached a different conclusion on substantially the same question. Morrison v. Springer, 15 Iowa, 304.

Article 8, § 1, subd. 3, of the present Pennsylvania Constitution fixes, among other qualifications of voters, the following: "He or she shall have resided in the election district where he or she shall offer to vote at least two months immediately preceding the election."

The Pennsylvania court in Re Lancaster City's Fifth Ward Election, 281 Pa. 131,

126 A. 199, 201, 35 A.L.R. 815, said: "The Legislature can confer the right to vote only upon those designated by the fundamental law, and subject to the limitations therein fixed. McCafferty v. Guyer, 59 Pa. 109. The latter has determined those who, absent from the district, may vote other than by personal presentation of the ballot, but those so permitted are specifically named in section 6 of article 8. The old principle that the expression of an intent to include one class excludes another has full application here. White, in his work on the Constitution (p. 360), succinctly sums up the proposition controlling this case when he says: 'The residence required by the Constitution must be within the election district where the elector attempts to vote; hence a law giving to voters the right to cast their ballots at some place other than the election district in which they reside (is) unconstitutional.'"

The people of New Mexico voted on a proposed amendment to their Constitution in 1920, limited to permitting those absent in the military service of the state or national government to vote for state officers, presidential electors, Representatives in Congress, and constitutional amendments. This will be referred to again in this opinion.

The Constitution of Wisconsin (1848, art. 13, § 5) provides: "That no person shall vote for county officers out of the county in which he resides."

This provision it was held in State ex rel. Chandler v. Main, 16 Wis. 398, 422, was intended to prohibit an elector of one county from voting for county officers to be elected for a county in which he did not reside, but does not prohibit an elector from voting when out of the county in which he resides for county officers of his home county. The court approved Chase v. Miller, supra, and differentiated between the Constitution of Pennsylvania and that of Wisconsin. Clearly, this case is not in point.

The Constitution of Ohio (1851) provides (article 5, § 1): "Every white male citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township, or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections."

The court stated in Lehman v. McBride, 15 Ohio St. 573: "We concede, then, that the constitution makes the 'residence' the 'fixed habitation,' or 'home,' of the voter, an essential part of his qualifications as an elector. It is the sole object of this section to define those qualifications, and to declare the right which they confer. It speaks of nothing else. And it is clear that the qualifications which confer the right to vote, and the place at which that right may be exercised, are things quite distinct from each other. * * * To qualify a person for voting for township officers, residence in the township is clearly necessary. But it does not follow, as a logical consequence, that the right to vote can be exercised only

within the township. If the enjoyment of the right is thus limited by the constitution, the restriction is not to be found in this section."

The court referred to Chase v. Miller, supra, as follows: "The constitution of Pennsylvania requires the elector to have resided for ten days immediately preceding the election 'in the election district where he offers to vote.' It was held, by the supreme court of Pennsylvania, that this phraseology imports that manual delivery of the ballot to the proper officer is to be made by the elector in the election district in which he resides, and that the legislature could not, therefore, authorize ballots to be cast outside of the election districts of the state. Chase v. Miller, 41 Pa. 403. The absence of any such clause in our state constitution renders this decision inapplicable to the case before us."

Judge Ranney dissented from the opinion of the court holding that the soldier's absentee voting statute was unconstitutional, in that it was the intention of the constitutional provision that ballots should be cast within the residential district of the voter. In any event, this section of the Ohio Constitution as shown by the reference to Chase v. Miller, supra, is not sufficiently like that being considered for the case to be of material help.

The Supreme Court of North Carolina in Jenkins v. State Board of Elections, 180 N.C. 169, 104 S.E. 346, 347, 14 A.L.R. 1247, construed a similar constitutional provision. The court said: "Section 2 provides that the voters shall have resided in the state for two years, in the county six months, and in the precinct, ward, or other election district, in which he offers to vote, four months next preceding the election. Section 3 declares that every person offering to vote shall be at the time a legally registered voter."

There is enough similarity between the Constitution of North Carolina and New Mexico to make them legally identical. The absent voters law of North Carolina provided that any voter who might be absent from the county in which he is entitled to vote should be allowed to vote as therein provided, then provides that no one can vote who has not duly registered and qualified under the laws of the state, then as to the manner of absent voting. The court reviewed a number of the cases to which we have referred, and after this stated: "Our Absentee Voters Act is a very different enactment. No one can vote under it unless he is registered and is otherwise a qualified voter. The elector must select his ballots and fill up and sign the form sent him, and seal them up in an envelop sent for the purpose. It must be addressed to proper official, and opened by him at 3 p. m. of election day. Every safeguard is provided to prevent fraud or mistake. These laws are a very great public convenience, and serve a very useful purpose, or they would not have been adopted in 33 states of the Union. They have been sustained by the highest courts of Iowa ([Morrison v. Springer] 15 Iowa 304), Ohio ([Lehman v. McBride] 15 Ohio St.

573), and Wisconsin ([State ex rel. Chandler v. Main] 16 Wis. 398) supra.

"Passing to a consideration of the text of our Constitution, we think the context of article 6 indicates that the personal presence of the voter is not required in order to cast his ballot. An offer to vote may be made in writing, and that is what the absent voter does when he selects his ballots and attaches his signature to the form and mails the sealed envelope to proper official. The section requires only that he must make that offer in the precinct where he has resided, etc. We see no reason why an offer to vote may not be made in writing as well as by word of mouth. An offer to buy or sell may be made in writing, and why not an offer to vote? There is nothing immoral in such transaction, and it violates no principle of public policy."

The effect of this decision is to hold that a soldier could vote by mail, and that the Constitution only required the offer to be made in the precinct where he resided. This of course in effect held that a law that provides for the vote to be cast out of the precinct of the voter's residence is unconstitutional and sustains the district court's judgment.

Section 2 of article 9 of the Constitution of Montana reads: "Every person of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote: * * * First, he shall be a citizen of the United States; second, he shall have resided in this state one year immediately preceding the election at which he offers to vote, and in the town, county or precinct such time as may be prescribed by law."

In Goodell v. Judith Basin County et al., 70 Mont. 222, 224 P. 1110, 1113, the Supreme Court of that state had before it the exact question here under consideration. An excerpt from that opinion clearly shows it as opposed to appellant's contention. The court stated:

"Chapter 155, above, is not open to the objections which were urged against the absent voters acts of the Civil War period. It is general in its terms and provides all the safeguards necessary to secure a secret ballot and an honest expression of the elector's choice. It does not undertake to create election precincts outside of this state or to authorize an elector to vote outside the precinct of his residence; but it does provide a simple and convenient method by which he may vote in his home precinct though absent in person from the polling place. It provides that the qualified elector who is duly registered and who expects to be absent from the county of his residence on election day, may in advance receive from the county clerk an official ballot. He must then make the required affidavit, mark his ballot, place it in the envelope provided for that purpose, securely seal the envelope, subscribe the affidavit printed upon the envelope, have the officer before whom he makes the affidavit, subscribe the certificate also printed upon the envelope, and the ballot is then transmitted by mail to the county clerk, who sends it with the elector's

application to the judges of election of the elector's precinct. On election day the judges of election remove the ballot from the envelope, detach the stub, and deposit the ballot in the ballot box. Ample means are provided for identifying the elector, whose right to vote is subject to challenge as in the case of an elector personally present. * * *

"In other words, the act in question merely constitutes the United States mail, the county clerk, and the judges of election the means by which a qualified and registered absent elector tenders his ballot for deposit in the ballot box."

Both the law and corresponding sections of the Constitution of Montana are so different from that of New Mexico the decision is of little assistance, and certainly none at all to appellant; for the Constitution of Montana does not in terms fix the precinct as the place where the offer to vote is made, nor does the law of that state provide for voting outside the precinct.

The Supreme Court of Arkansas in Jones v. Smith, 165 Ark. 425, 264 S.W. 950, construed an absentee voters law of that state in connection with section 1 of article 3 of its Constitution which prescribes among the qualifications of an elector that he must have "resided in the State twelve months, and in the county six months, and in the voting precinct or ward one month, next preceding any election, where he may propose to vote." The court after reciting the substance of the law with reference to who was authorized to vote by absentee ballot

and that such persons "may vote for any township, county, district or state officer, etc," added:

"The statute further provides a method whereby an absentee from his county may vote. It provides that the voter shall present himself to the election officers of any precinct where he may be on the day of the election and tender his ballot, together with an affidavit in prescribed form, and that the ballot shall be received by the election officers, sealed in an envelope, and delivered to the county clerk of that county, who is to forward the same to the county clerk of the voter's residence, and that the latter shall preserve the ballot and deliver it to the canvassing board of the county when the same is convened for the purpose of canvassing the returns. The statute further provides that the ballot, if found to be legal, shall be returned among the ballots of the township in which the absent voter resides.

"The argument of counsel for appellant is that the statute attempts, in violation of the Constitution, to permit a person to vote outside of the county of his residence, but we are of the opinion that this argument is unsound. A ballot cast pursuant to this statute is in effect one cast in the county, township, and voting precinct of the absent voter, even though the voting process begins in another county. * * * Aside from those constitutional restrictions the Legislature has power to devise the method for conducting an election, and to provide for election officers charged with the duty of complying with the constitutional re-

quirements, so this statute does not violate those limitations mentioned above by allowing absent voters to deliver their ballots to election officers in other counties, to be forwarded to the county of the voters' residence, and there returned as a part of the ballots in that county. We have nothing to do with the question of wisdom or policy of granting this privilege to absent voters, but we find nothing in the Constitution which prohibits the Legislature from authorizing ballots to be cast in that manner, for the effect is to allow the ballot to be cast in the voting precinct where the absent voter resides, and all of the requirements of the Constitution are thus complied with with respect to the election being by ballot and each ballot numbered and recorded. This is all done by the machinery provided in the statute which authorizes absentees to vote. * *

"The statute under consideration in the present case does not attempt to permit a voter to cast his ballot outside of the county or precinct of his residence. On the contrary, the statute merely permits him, in case of absence from the county, to deposit his ballot to be forwarded to the county of his residence and there to be treated as one of the ballots cast in the township where the voter resides."

This case and the one to be considered after it, more nearly than any we have found, support the appellant's contention. The law apparently provides for a ballot to be voted exactly like the one the voter would have cast in person in his own precinct had he been present and is returned among the ballots of the precinct of his residence. The other case is Straughan v. Meyers, 268 Mo. 580, 187 S.W. 1159, 1161.

Section 2 of article 8 of the Constitution of Missouri (1875) reads:

"Every male citizen * * * possessing the following qualifications, shall be entitled to vote at all elections by the people: * * * He shall have resided in the county, city or town where he shall offer to vote, at least sixty days immediately preceding the election."

The absentee voters law of that state provides that the ballot of a voter may be cast in any voting precinct of the state where he may present himself on the day of election, and states the conditions and regulations under which he may so vote. The constitutionality of this act was considered by the Supreme Court of Missouri in Straughan v. Meyers, supra. The conditions and regulations are stated in the opinion as follows: "That he present himself during voting hours and make and subscribe, before one of the election judges, an affidavit relative to his residence and qualifications as an elector; the reasons of his absence from his county; and that he has not voted and will not vote elsewhere. This being done, the act provides that he is then entitled to a ballot of a certain and specifically defined kind, to wit, a blank ballot with the names of all the judges written on the back thereof. This ballot he is then authorized to mark, fold, and hand to the judge in like

manner as a resident voter. The act further provides that such ballot shall not be deposited in the ballot box nor entered upon the pollbooks, but shall, together with the affidavit, be sealed in an envelope, which is signed by one of the judges and be filed with the clerk of the county where the ballot was cast, and be by him transmitted to the clerk of the county where the voter resides. Ample provisions are then made for recording and counting such votes in the county of the voter's residence, as well as for the preservation of the ballots and penalties for violation of the Act."

The court in passing upon the constitutionality of this law said:

"It is clear that this section does not undertake to prescribe the manner in which a choice shall be expressed, or a vote cast, or the ballots prepared, deposited, or counted, but merely the qualifications of the voters. It is true, under this provision, a person can vote only in the place of his residence, but this constitutes no inhibition against any particular method the Legislature may provide to enable him to so vote. The word 'vote' means suffrage, voice, or choice of a person for or against a measure or the election of any person to office. It is not synonymous with 'ballot,' which is merely the means or instrument by which the person votes, or rather expresses his choice or exercises his right of suffrage. * * *

"Had this measure provided that such absent voter could vote, that is, could exercise a right of choice for or against matters relating to the place where he did not reside, for instance candidates of a county or district other than that of his residence, there would be no doubt of its invalidity; but it does not so undertake. The act specifically provides that the ballot shall not be deposited in the ballot box, nor entered upon the pollbooks, but that same shall, under certain safeguards and regulations, be transmitted to the clerk of the county where the voter resides, and be there counted. The act of legally voting, as the term is understood in law, embodies the right to have the vote counted. This act does not undertake to authorize a person to vote in a place other than that of his residence, but merely provides a system or method through which he may vote in the place of his residence."

The greater weight of authority (including all recent cases cited by appellant) is that the act of voting under such constitutional provisions must be exercised in the precinct of the residence of the voter, though courts differ as to what constitutes that act.

It may be that the corresponding provision of the Constitutions of Pennsylvania or Michigan was thus modified and adopted, or it may have been a reconstruction, as we have suggested, of the New Mexico statute.

Appellant calls attention to the fact that the same section of the Constitution we are now considering also provided that the Legislature "Shall regulate the manner,

time and place of voting," and therefore it did not intend to limit the place of voting to the precinct in which the voter resided, but only to fix the qualification of a voter. No one would contend that any citizen of the United States who is over the age of 21 years and has resided in New Mexico 12 months, in the county 90 days, and in the precinct where he resides 30 days, is not a legal voter by virtue of that provision of the Constitution, though he may never have offered to vote. This phrase, "in the precinct in which he offers to vote," was placed in the Constitution for some purpose; it adds nothing to the qualifications of a voter.

The power to regulate the "place of voting" evidently had reference to the selection of places for holding elections in each precinct, at that time provided for by section 5, chap. 105, N.M.Session Laws 1909 (section 1978, N.M.Code 1915). Since 1868, elaborate provisions had been made by the territorial legislative assembly for registering voters in the precincts of their residence and for their voting in such precincts, nor could an unregistered person vote, nor could any person vote outside the precinct of his residence, except as hereinbefore stated; and since 1851 voting had been by ballot, and each voter required to deliver his own vote in person.

The principal reasons for requiring ballots to be cast in the precinct of the residence of one offering to vote are for his convenience, and that his neighbors, acquainted with his qualifications, may challenge his vote. Both are indispensable to an expression of the will of the people by its qualified voters. We hold that section 1 of article 7 of the Constitution requires a voter to cast his ballot in the precinct in which he resides. The law provides that it be cast in the county seat.

Having reviewed the principal decisions on the question, we now revert to the laws of New Mexico as they existed at the time the Constitution was written.

Can an absentee ballot be cast at the county seat and the vote be in the precinct in which the voter resides outside the county seat? This is answered in the affirmative by the Supreme Court of Missouri in Straughan v. Meyers, supra, and by the Supreme Court of Arkansas in Jones v. Smith, supra. The laws of both states require that the ballot shall be recorded on the poll books of the precinct of the voter's residence, and counted as ballots of that precinct (a provision not in our statute), from which it is reasoned that as the ballots are the same as those voted in such precinct, and are treated as such in counting and canvassing, it is in effect voting in the precinct of the voter's residence. If an absentee ballot can be cast and counted in this manner, we see no reason why the Legislature could not do away with precinct voting entirely, and provide for all votes to be cast at the county seat, having separate boxes in which to deposit the ballots of the residents of each precinct. There is just as much reason in one as the other. Once

conceded that the ballot may be cast out of the precinct, the effect of the constitutional provision is completely destroyed. It is not what will be done under a law, but what can be done, that is the test of its constitutionality. The object of precinct voting could be utterly destroyed if ballots can be cast outside ·the precinct. We hold that the law in question is unconstitutional because under it the ballots are not cast in the precinct where the voter resides.

██ A much more difficult question is whether the provision of the Constitution which we are considering requires the manual delivery of the ballot by the voter at the polls, or may some other means of delivery be substituted? The leading case on the subject is Chase v. Miller, supra. For convenience we again copy the provision of the Pennsylvania Constitution (1838, art. 3, § 1): "In elections by the citizens, every white freeman of the age of twenty-one years, having resided in this State one year, and in the election-district where he offers to vote ten days immediately preceding such election."

This is so similar to the corresponding provision of the New Mexico Constitution that the question of law involved is identical. In passing upon the constitutionality of a law authorizing soldiers to vote in or out of the state, and providing for the return of the ballots, the Supreme Court of Pennsylvania said: "To 'offer to vote' by ballot, is to present one-self, with proper qualifications, at the time and place appointed, and to make manual delivery of the ballot to the officers appointed by law to receive it. The ballot cannot be sent by mail or express, nor can it be cast outside of all Pennsylvania election districts and certified into the county where the voter has his domicil. We cannot be persuaded that the constitution ever contemplated any such mode of voting, and we have abundant reason for thinking that to permit it would break down all the safeguards of honest suffrage. The constitution meant, rather, that the voter, in propria persona, should offer his vote in an appropriate election district, in order that his neighbours might be at hand to establish his right to vote if it were challenged, or to challenge if it were doubtful."

As we have seen, a section of the Constitution of Michigan also is similar to that now under consideration; in regard to which Justice Campbell of the Supreme Court of Michigan (the four justices delivered separate opinions), in People v. Blodgett, supra, said: "It has not been denied by ·any one, nor do I think it can be reasonably doubted, that the first impression any one would receive from reading this section, would be that the voter must attend the election in his own township. Nor can it be any more doubted that the ordinary means for preventing fraudulent voting by ballot require such presence. The reason for allowing voting by ballot, instead of viva voce, has always been claimed to be, that the voter by

ballot might preserve secrecy as to his vote, and thus escape the danger of oppressive influences. But be this as it may, a ballot, once cast, furnishes no means of identifying the voter, who, by voting viva voce, is seen and recognized by all present. Unless, therefore, there is some other means of identifying him, there is no security against false and illegal voting. If the voter is required to present himself personally at his own place of abode, his neighbors will know his person, and will be likely to know his qualifications. If he can vote elsewhere, and have his vote transmitted or counted in the township, he may or may not be known personally to those who are where he is found, but they are by no means likely to know his actual residence, nor, if he violates the law, can his crime be as readily identified or proven. That other means of protection may be devised is possible; but the test by neighboring eye-witnesses has always been the favorite resort of the law, and it is the best. But it is sufficient for my present purpose to know that, whether the best or not, it is simple and valuable. The interpretation, then, which holds that the clause requiring voting to be in the township of the voter's residence, was meant to secure his presence where he is known, is not only the primary and natural inference, but is also founded on a reason which is of some weight in securing the purity of elections, which is one of the prominent purposes of the article containing the section in controversy."

The court then held that this provision required the voter to cast his ballot in person in the township or ward of his residence.

In referring to Chase v. Miller, supra, the Supreme Court of Iowa in Morrison v. Springer, cited by appellant, said: "The decision in the case just referred to, and the comments of the learned justice delivering the opinion upon this particular point of the case [the point here being considered], were undoubtedly correct."

The Supreme Court of Ohio in Lehman v. McBride, supra (also cited by appellant), stated with reference to the Pennsylvania decision in Chase v. Miller: "The constitution of Pennsylvania requires the elector to have resided for ten days immediately preceding the election 'in the election district where he offers to vote.' It was held by the supreme court of Pennsylvania, that this phraseology imports that manual delivery of the ballot to the proper officer is to be made by the elector in the election district in which he resides, and that the legislature could not, therefore, authorize ballots to be cast outside of the election districts of the state. Chase v. Miller, 41 Pa. 403. The absence of any such clause in our state constitution, renders this decision inapplicable to the case before us."

And likewise the Supreme Court of Wisconsin in State ex rel. Chandler v. Main, 16 Wis. 398, 422, cited by appellant, referred to Chase v. Miller, as not construing a constitutional provision at all like that of Wisconsin.

We have heretofore referred to the case of Bourland v. Hildreth, 26 Cal. 161, in which it was held by a divided court that the provision of that State's Constitution, though quite different from that of New Mexico, required the voter to cast his ballot in person within the district in which he resided, stating: "At the time of the adoption of our Constitution, the universal practice was for electors to vote in the county, district, town or precinct in which they resided, and, as a general rule, this manifestly should be so."

In 1920, the people of the state of New Mexico voted on the adoption of a proposed amendment to the Constitution (now appearing as section 6 of article 7, N.M. Const.), which reads as follows: "Citizens of the state, absent from their places of legal residence, in the military or naval service of the United States, or of this state, and being otherwise qualified electors, may be allowed to vote at any election for all state officers, presidential electors, representatives in congress, and upon constitutional amendments, under such regulations and limitations as may be prescribed by law."

If it had been intended that other classes of persons should be permitted to vote absentee ballots, then such provision could have been included in the resolution submitting this proposed amendment to the qualified voters of the state for their decisions; but it was limited to those in military service. If appellant's contentions are correct, the adoption of this amendment would have added nothing to the powers of the Legislature.

In view of section 3 of art. 7 of the Constitution requiring "at least three-fourths of the electors voting in the whole state, and at least two-thirds of those voting in each county of the state," to effectively adopt an amendment to section 1 of article 7 of the Constitution, involved here, we do not hold that the proposed amendment was adopted, though a majority of those voting favored it.

The proposed amendment to the New Mexico Constitution would have permitted the Legislature to provide for a certain class to cast a limited ballot by absentee vote, had it been adopted; and this indicates that the Legislature and the people assumed that absentee voting was prohibited by the Constitution, and that it should not be extended further than indicated in the proposed amendment.

In the case of In re Lancaster City's Fifth Ward Election, 281 Pa. 131, 126 A. 199, 35 A.L.R. 815, an amendment to the Constitution of Pennsylvania was construed, wherein soldiers were permitted to vote by absent ballot as in New Mexico. The identical question before us was decided in that case. The court, in holding that it applied only to soldiers and a law extending it to the general right of suffrage was unconstitutional, stated: "The Legislature can confer the right to vote only upon those designated by the fundamental law, and subject to the limitations therein fixed. McCafferty v. Guy-

er, 59 Pa.. 109. The latter has determined those who, absent from the district, may vote other than by personal presentation of the ballot, but those so permitted are specifically named in section 6 of article 8. The old principle that the expression of an intent to include one class excludes another has full application here. White, in his work on the Constitution (p. 360), succinctly sums up the proposition controlling this case when he says:

" 'The residence required by the Constitution must be within the election district where the elector attempts to vote; hence a law giving to voters the right to cast their ballots at some place other than the election district in which they reside (is) unconstitutional.' "

The Constitutional Convention adopted a provision, the language of which had been construed by some of the ablest courts of America, and its terms were invariably held to require the voter to personally deliver his ballot at the precinct polls of his residence; and only since the adoption of the New Mexico Constitution has any court decided differently. Jenkins v. State Board of Elections, 180 N.C. 169, 104 S.E. 346, 14 A.L.R. 1247; Jones v. Smith, 165 Ark. 425, 264 S.W. 950; Straughan v. Meyers, 268 Mo. 580, 187 S.W. 1159. The statutes of New Mexico had for 60 years so provided; and the Legislature submitted a proposed amendment of the Constitution authorizing the enactment of laws permitting a class of citizens to vote by absentee ballots, but did not propose the extension of the authority to include any other class. In the light of these facts, we are satisfied that it was intended by the language, " * * * in the precinct in which he (the voter) offers to vote," that the ballot should be delivered by the voter in person at the polls in the precinct of his residence.

We therefore hold that chapter 127, N.M.Session Laws of 1933, is unconstitutional, in that it permits voters to vote otherwise than by personally casting their ballots in the precinct of their residence.

The motion for rehearing is overruled.

Finding no error in the record, the judgment of the district court is affirmed.

It is so ordered.

SADLER, C. J., and HUDSPETH and BICKLEY, JJ., concur.

ZINN, J., did not participate.