58 P.(2d) 1192

ROSWELL MUNICIPAL SCHOOL DIST. NO. I, CHAVES COUNTY, et al. v. PATTON, Atty. Gen.

No. 4229.

Supreme Court of New Mexico.

June 16, 1936.

Frank H. Patton, Atty. Gen., and Quincy D. Adams and J. R. Modrall, Asst. Attys. Gen., for appellant.

Hervey, Dow, Hill & Hinkle, of Roswell, for appellees.

SADLER, Chief Justice.

The plaintiffs (appellees) sued defendant in the district court of Santa Fé county seeking a declaratory judgment under the provisions of Laws 1935, c. 143. Roswell Municipal School District No. 1 of Chaves County, through appropriate proceedings, initiated a bond election for the issuance of $65,000 of bonds of said district for school purposes. An election for such purpose was held on April 7, 1936. On the same day the regular municipal election was conducted in the city of Roswell (lying within said school district) for the election of municipal officers. The school district involved embraced not only all territory lying within the corporate limits of the city of Roswell, but also a large area outside such limits, annexed thereto for school purposes. The municipal election involved no contested offices, but one political party being represented on the ticket. A canvass of the returns of the bond election showed 339 for the issue and only 298 against. The result was certified accordingly.

In accordance with statutory provisions governing the issuance of school bonds, a duly authenticated transcript of all the proceedings was filed with the defendant, the Attorney General of the State of New Mexico, for his approval or rejection as provided by law. He refused to approve said transcript solely upon the ground that the school bond election and the municipal election occurred on the same day.

All of the facts hereinabove recited appeared by appropriate allegations in the petition for declaratory judgment. A demurrer was interposed thereto, raising the single issue presented by the Attorney General's refusal to approve the transcript tendered him. The district court of Santa Fé county overruled the demurrer, and defendant, electing to stand on same, refused to plead further. The trial court thereupon entered judgment declaring regular and in accordance with law all of the proceedings in connection with said bond issue; that plaintiffs were duly empowered to issue said bonds; and that defendant should approve the transcript tendered to him. This appeal is prosecuted to review that judgment. The single question mentioned, decisive of the correctness of the trial court's ruling on demurrer, is presented for review.

Section 1 of article 7 of the Constitution of the State of New Mexico provides: "Every male citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in

the precinct in which he offers to vote thirty days, next preceding the election, except idiots, insane persons, persons convicted of a felonious or infamous crime unless restored to political rights, and Indians not taxed, shall be qualified to vote at all elections for public officers. *All school elections shall be held at different times from other elections.* Women possessing the qualifications prescribed in this section for male electors shall be qualified electors at all such school elections; provided, that if a majority of the qualified voters of any school district shall, not less than thirty days before any school election, present a petition to the board of county commissioners against woman suffrage in such district, the provisions of this section relating to woman suffrage shall be suspended therein, and such provision shall become again operative only upon the filing with said board a petition signed by a majority of the qualified voters favoring the restoration thereof. The board of county commissioners shall certify the suspension or restoration of such suffrage to the proper school district." (Italics ours.)

█ The parties agree that this election is a "school election" within the meaning of that term as used in this article of the Constitution. Klutts v. Jones, 20 N.M. 230, 148 P. 494. The plaintiffs' contention is simply that the adoption of the Nineteenth Amendment to the Constitution of the United States, extending the franchise to women, removed the reason for the separation of school elections from other elections, and the reason for the provision hav-

ing failed, the provision itself is no longer operative.

It is true that at the time of the adoption of our State Constitution women did not have the franchise generally in this state, but that under certain conditions they might vote in school elections. Hence, it is plausible enough to argue that this may have been, and doubtless was, one of the reasons for this constitutional provision. Nevertheless, other reasons suggest themselves. As the defendant urges, it is just as reasonable to assume that the framers of the Constitution sought to avoid having political issues color or influence school elections. They may very well have thought it better and wiser policy to have the vote of the electorate at school elections uninfluenced by any feeling of partisanship and to permit the voter's mind to be centered solely upon school matters.

In view of these considerations, we are unable to accept plaintiffs' contention that the adoption of the Nineteenth Amendment has rendered innocuous and inoperative the constitutional provision separating school elections from other elections.

█ This conclusion compels a definition of the words "other elections." Does the phrase embrace in meaning a municipal election? The plaintiffs contend it does not and, hence, say they may concede error in their first argument and still avoid the effect of the constitutional provision, because confined in meaning to general elections. We are not so impressed. Certainly, the language employed, "other elec-

tions," is all-embracing. Upon its face, it is broad enough to include "all elections" or "any other election." Unless strong reasons compel us to give the words a narrower meaning than that which they bear upon their face, we should interpret them as written.

But, when resort is had to interpretation, we are led to the conclusion that the meaning was intended which the words on their face suggest. If a moving reason for separating school elections from other elections was to avoid confusion of issues, to eliminate as far as possible the injection of partisan politics into such elections, and to permit the settlement of issues involved in school elections free from the strain, rush, and feeling often engendered and usually attendant upon general elections (and such a reason suggests itself as quite plausible), then it is just as important to achieve this end in relation to a municipal election as a general election.

If there be a difference, it is in degree only. Rivalry for the various municipal offices is often as keen, and the intensity of feeling engendered thereby as high, in municipal as in general elections. Nor can we close our eyes to the fact that partisanship between members of the two major political parties makes itself felt in the one election as well as in the other.

We hold that the words "other elections," as used in article 7, § 1, of the State Constitution, separating school elections from other elections, embrace a municipal election. This, notwithstanding 1929 Comp. § 120-703.

That we are not afield in arriving at the true intent of the framers of the Constitution is demonstrable. The majority report of the committee on elective franchise, in a sentence following immediately that prescribing the qualifications of voters, covered this subject in the following language, to wit: "Women shall be qualified electors at all school elections provided the same are held apart in time from general elections."

But as agreed to by the convention the provision for different elections was entirely separated from the language making women qualified electors in school elections, by placement in a distinct sentence to itself and was extended to embrace municipal elections. As so agreed upon, it read: "All school elections shall be held separate and apart from general or city, town or village elections."

As reduced to final form by the committee on revision, and accepted by the convention, which is its present form in the Constitution, its separation into a distinct sentence from that dealing with women's right to vote in school elections continues. It reads: "All school elections shall be held at different times from other elections."

Apparently an effort was made, as disclosed by the majority report mentioned, to confine the provision to general elections, the contention here made by plaintiffs. This thought did not meet the views of the convention, and by express language as agreed to by the convention it was made to include city, town, and village, as well as

general, elections. The committee on revision, and finally the convention itself, evidently considered, as do we, that the one phrase, "other elections," embraced them all.

The plaintiffs also argue that, even if wrong in their contention that this language in the Constitution is no longer operative, and even though the words "other elections" be held to include municipal elections, nevertheless it is here inapplicable because the municipal election did not extend over the entire school district. We find no merit in this contention. It is a matter of common knowledge that where a rural territory is attached to a municipality for school purposes, the larger part of the voting population resides in the municipality. Whether this be true or not, to the extent that the two elections overlap territorially the very result sought to be avoided exists. If we enforce the Constitution as written, it cannot exist to any extent. The dilemma here presented may be avoided altogether by the simple expedient of choosing a date for school elections apart from the date for other elections.

It follows from what has been said that the judgment of the district court must be reversed. The cause will be remanded to the district court of Santa Fé county with directions to set aside its judgment and sustain the defendant's demurrer.

It is so ordered.

HUDSPETH, BICKLEY, BRICE, and ZINN, JJ., concur.