TENNESSEE MIN. & MFG. CO. *v.* ANDERSON COUNTY *et al.*

(*Knoxville,* September Term, 1938.)

Opinion filed November 25, 1938.

NORMAN B. MORRELL, of Knoxville, for complainant.

FORREST ANDREWS, of Knoxville, and BEN F. ALEXANDER, of Clinton, for defendants.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

By the bill complainant asks that the defendants, Anderson County and C. W. Cantrell, Superintendent of

Roads in said county, be enjoined for condemning a strip of ground through its property for road purposes.

It is conceded that defendants were acting under the authority of Chapter 446 of the Private Acts of 1933 (applicable to Anderson County), which complainant insists is unconstitutional, for the reason that under section 2 thereof no provision is made for the payment of the increase in the award that the landowner might obtain upon appeal to the circuit court. The chancellor sustained this contention, and made the temporary injunction perpetual. Defendants have appealed to this court, and assign the action of the chancellor in holding said Act unconstitutional for error.

Section 2 of the Act is as follows:

"Be it further enacted, That all application to open, change, or close or restore to the public any and all public roads shall be made by written petition to the Superintendent of Roads stating the section or sections, district or districts in which the road is located, giving complete description of the present road and desired changes and the landowners to be affected thereby.

"The Superintendent of Roads within ten days after the application has been filed with him shall notify the person first named on the petition, the owners of the land adjoining said changes, of the date on which he will be present, at the beginning point mentioned in the petition, to act on the application.

"If any landowner affected by the proposed changes be a non-resident then ten day written notice to his agent or attorney residing in the county, shall be a legal notice, and if such non-resident has no agent or attorney residing in the county, publication shall be made for four consecutive weeks in some newspaper published in said

county, giving notice of the time and place the said Superintendent of Roads shall meet the interested parties to act upon said petition.

"The said Superintendent of Roads may when he deems necessary open, close or restore to the public any and all roads of the county, or when necessary open new roads and condemn land for rights of way, gravel pits, chert pits, rock quarries and borrow pits to procure material for road construction and repair, provided he has given the proper notices as above set out.

"The Superintendent of Roads shall attend at the appointed time and place and after all the interested parties have been notified, shall act upon the petition or motion as the case may be and report his actions to the Judge or Chairman of the County Court, and with his report file the written petition and notice to the landowners and a full report of his actions on the same, stating the new location of the road so opened, closed or changed and amount of damages allowed by him to parties damaged and this he may do in case of emergency without petitions and on his own motion provided he gives the notices and files full report as required in case of petition. The Judge or Chairman of the County Court shall have the petition and report entered on record in the office of the County Court Clerk and at its next quarterly session the County Court shall appropriate a sufficient amount of county funds to pay such damages as shall have been awarded by a disinterested committee of three appointed by the County Judge or Chairman to view the premises and appraise the damages, and the Superintendent of roads shall issue his warrant for such damages. Any interested party may appeal to the next term of the Circuit Court, provided he shall perfect his

appeal within ten days from the final action of the County Court entered or record. When any property is condemned for road purposes it may be taken at once.''

It will be observed that the Act only provides compensation for paying the award of the committee of three appointed by the county judge, and makes no provision for compensating the landowner where the case is appealed to the circuit court.

In *Town of Madisonville* v. *Cagle,* 159 Tenn., 600, 21 S. W. (2d), 385, the town sought to condemn a strip of Cagle's land in order to enlarge its waterworks system. This court, in sustaining such right, said [page 603]:

"The charter, chapter 66, Priv. Acts 1915, authorizes the town to provide a system of waterworks, and the amendatory act (chapter 488, Priv. Acts 1929) confers upon the town the power of eminent domain that it may acquire property inside or outside the corporate limits for use of its waterworks system. Both acts are silent as to the procedure or the means of compensating for property acquired. But the want of an express provision for compensation in such special statute is not necessarily fatal, if a general law is in existence which provides for the procedure through which compensation may be determined and which provides a means for enforcing its payment. The special statute will be construed *in pari materia* with the general law. *City of Nashville* v. *Dad's Auto Accessories,* 154 Tenn., [194], 201, 285 S. W., 52.

"It cannot be assumed that the Legislature intended to authorize the taking without compensation, but, on the contrary, that it was intended that the power conferred, without reference to the mode of procedure or means of compensating landowners, would be pursued in conformity with the existing general statutes governing the

power of eminent domain. This rule of construction has been applied in construing similar statutes in the following cases. [*City of*] *Memphis* v. *Hastings,* 113 Tenn., 142, 86 S. W., 609, 69 L. R. A., 750; [*State*] *Highway Department* v. *Mitchell's Heirs,* 142 Tenn., 58, 69, 216 S. W., 336; *Williamson County* v. *Turnpike Co.,* 143 Tenn., 628, 228 S. W., 714; *Stokes* v. *Dobbins,* 158 Tenn., 350, 13 S. W. (2d), 321. See, also, 20 C. J., p., 649, section 126.

"Proceeding, as the town must, for lack of definite procedure outlined in the charter acts under section 1844 and subsequent sections of Shannon's Code, the procedure, the measure of compensation and the means of payment are governed by the general statutes. They supply an adequate remedy to the landowner. They afford an impartial tribunal for the assessment of damages and the compensation there awarded is a charge upon the public treasury of the town, upon its general funds and resources, and so the constitutional requirements are thereby met. Cooley's Constitutional Limitations, p., 692."

Counsel for complainant insists that the foregoing authority is not applicable in the instant cause since defendants are proceeding under a private act which undertakes to provide for all of the details of condemnation, so that the act must be treated as being self-sufficient, citing *Wright* v. *Donaldson,* 144 Tenn., 255, 230 S. W., 605, and *Bragg* v. *Yeargin,* 145 Tenn., 643, 238 S. W., 78.

In order to clarify and make uniform the procedure in controversies of this character the compliers of the 1932 Code added the following section to the chapter authorizing the taking of private property for works of internal improvement (sections 3109-3132), to-wit:

"All of the preceding sections of this chapter shall be

deemed, unless expressly stated to the contrary, and without incorporation or reference, to be a part of every section, or legislative act, present or future, which grants the power of such condemnation. The making of compensation for such a taking, as therein set forth, shall also be so implied.'' Section 3133.

■ By reading this section into the Act under consideration it seems that ample provision is made for compensating the landowner in the circuit court.

■ Counsel does not seriously controvert this conclusion, but insists that the foregoing section is ''new matter,'' not covered by the caption to the new Code. In our opinion, this section simply amends the Eminent Domain Law so as to provide for the payment of adequate compensation to the landowner in all condemnation proceedings. But, treating it as ''new matter,'' we think it is sufficiently covered by the title, which is as follows:

''An Act entitled an Act to revise and codify the General and Public Statutes of the State of Tennessee.

The word ''revise'' means to make anew, to correct, to amend, to change. Webster's New International Dictionary; *Gamble* v. *State*, 159 Tenn., 446, 19 S. W. (2d), 279; *Falconer* v. *Robinson*, 46 Ala., 340, 348; *American Indemnity Co.* v. *City of Austin*, 112 Tex., 239, 246 S. W., 1019. In the last-named case the Supreme Court made the following statement [page 1023]:

''Section 43 [of the Constitution] having given the Legislature authority to revise the laws, without, within itself or by any other section of the Constitution, having prescribed the method of revision, or without having limited the legislative power, except in so far as this power is limited in the enactment of any other law, the Legislature has plenary authority to revise, and may do so

in its own way and to any extent, provided, always, the substance of the proposed revision is not otherwise prohibited by the Constitution. It may do so by omitting laws from the Code, which, when done, under the repealing clause, are repealed. It may do so by changing words or phrases for the purpose of harmony or brevity, without in fact changing the meaning, or it may do so by the incorporation of new and material matter in the revision. The term 'revise' is broad enough to permit the amendment of existing laws or statutes in these several ways.''

We conclude, therefore, that section 3133 of the Code is embraced within its caption.

Finally, it is argued that the involved Act is a private one, while the Code purports to revise and codify the public statutes only. The Act in question was enacted subsequent to the adoption of the new Code, and hence was not revised by it. Section 3133 of the Code is a general statute, and is ''a part of every section, or legislative act, present or future, which grants the power of such condemnation.'' In other words, this section must be read into every legislative act granting the power of condemnation. When this is done the involved Act squares with the Constitution, and affords the landowner ample compensation for the land taken from him.

It follows from what we have said that the decree of the chancellor is reversed, the bill is dismissed, and complainant is taxed with the costs.