429 P.2d 336

CITY OF RATON, a municipal corporation, Petitioner-Appellee,

v.

Eva Mae SPROULE, City Clerk of Raton, New Mexico, Defendant-Appellant,

and

O. L. Anderson, William Crawford, Joe V. Torres, Reuben F. McBride, Bob B. Blaine, and Ray Durrett, Intervenors-Appellants.

No. 8214.

Supreme Court of New Mexico.

June 19, 1967.

Robert S. Skinner, Raton, for appellee.

James L. Parmelee, Jr., Frank L. Horan, Albuquerque, for Eva Mae Sproule.

Albert O. LeBeck, Jr., Gallup, for intervenors Anderson and Crawford.

Zinn & Donnell, Santa Fe, for Torres and McBride.

William H. Darden, Raton, for Blaine and Durrett.

## OPINION

OMAN, Judge, Court of Appeals.

The City of Raton, Colfax County, New Mexico, filed suit in the district court of Colfax County, whereby it sought a judgment declaring the constitutional validity of the following:

(1) The amendment to article 9, § 12 of the New Mexico Constitution, which was submitted to the voters on November 3, 1964, as Proposal No. 7;

(2) Chapter 300, New Mexico Laws of 1965, insofar as the same implements the said constitutional amendment, and which implementing provisions now appear as §§ 14-29-1 to -9, N.M.S.A.1953 (Supp. 1965);

(3) An election resolution, passed by the governing body of the city, calling for a special election on a general obligation bond issue for flood control purposes, adopted pursuant to the provisions of article 9, § 12 of the New Mexico Constitution and the said implementing provisions of the New Mexico statutes.

The suit was brought against the City Clerk, who refused to publish the resolution and to proceed with the election. Her reasons for her refusal were that the said constitutional amendment was not validly adopted, and that the implementing legislation is unconstitutional and void.

The intervenors, Blaine and Durrett, are resident taxpayers of the City of Raton, and their position is that the amendment is valid and was validly adopted, insofar as the same authorizes the calling of special elections for the purposes of incurring indebtedness, but that the amendment is in-

valid, insofar as it provides that non-residents of the city, who are residents of the county wherein the city is situate and who own property within the city and have paid a property tax therein during the preceding year, are qualified electors at an election for the purpose of incurring municipal indebtedness. They further contend that the claimed invalid portion of the amendment is severable, and, thus, does not affect the validity of the other portion.

The intervenors, Torres and McBride, are residents of Colfax County, but do not reside within the City of Raton. They do own property within the city, and they paid a property tax thereon within a year of the filing of the petition in this cause.

Their position is that the amendment is valid in its entirety. However, they attack the validity of the implementing legislation which requires them to register and vote in a precinct within the City of Raton. They further contend that the amendment is self-executing, and therefore, they can properly vote in their regular voting precincts, outside the city, when voting at an election for the purpose of incurring municipal indebtedness.

The intervenors, Anderson and Crawford, are residents of Santa Fe County and Bernalillo County, New Mexico, respectively, but they own property situate within the City of Raton and paid a property tax thereon during the year preceding the filing of the petition in this cause.

Their position is that the amendment and the implementing legislation are invalid, because the limitation of electors to residents of Colfax County is an arbitrary and unreasonable classification and violates either or both the "due process" and "equal protection" clauses of amendment 14, § 1, Constitution of the United States.

The trial court upheld the validity of the amendment, implementing statutes, and the election resolution in all respects, and entered judgment accordingly. The defendant and all the intervenors have appealed.

We shall first dispose of the attacks upon the validity of the entire amendment and then proceed to the attacks upon the validity of a portion of the amendment and the implementing legislation. The disposition of the attack made upon the election resolution will depend entirely upon the disposition we make of the questions concerning the validity of the amendment and the implementing legislation.

■ We have repeatedly held that every presumption is to be indulged in favor of the validity and regularity of legislative enactments. Board of Directors, etc. v. County Indigent Hosp. Bd., 77 N.M. 475, 423 P.2d 994; Silver City Consol. Sch. Dist. No. 1 v. Board of Regents, 75 N.M. 106, 401 P.2d 95 (1965); Gruschus v. Bureau of Revenue, 74 N.M. 775, 399 P.2d 105 (1965); Moruzzi v. Federal Life & Cas. Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407 (1938). A statute will not be declared unconstitutional unless the court is satisfied beyond all reasonable doubt that the legislature went outside the constitution in enacting the challenged legislation. State ex rel. Hovey Concrete Prod. Co. v. Mechem, 63 N.M. 250, 316 P.2d 1069 (1957); State v. McKinley, 53 N.M. 106, 202 P.2d 964 (1949).

■ Logic and reason compel that a like, or even stronger, presumption must prevail in favor of the validity of a constitutional amendment which has received both legislative approval and approval of the qualified voters of the state at a regularly called election. In the case of State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So. 2d 477 (1949), the Supreme Court of Louisiana, in quoting from the earlier case of Board of Liquidation v. Whitney-Central Trust & Savings Bank, 168 La. 560, 122 So. 850 (1929), stated the rule, relative to the presumptive validity of a constitutional amendment, as follows:

"In reaching the decision, the court must necessarily have in mind the universal rule that, whenever a constitutional amendment is attacked as not constitutionally adopted, the question presented is, not whether it is possible to condemn, but whether it is possible to uphold; that every reasonable presumption, both of law

and fact, is to be indulged in favor of the legality of the amendment, which will not be overthrown, unless illegality appears beyond a reasonable doubt. People [ex rel. Elder] v. Sours, 31 Colo. 369, 74 P. [167], 169; 102 Am.St.Rep. 34; People [ex rel. Tate] v. Prevost, 55 Colo. 199, 134 P. 129; Martien v. Porter, 68 Mont. 450, 219 P. 817."

█ Keeping in mind our duty to uphold the constitutional validity of the amendment, unless its illegality is made to appear beyond all reasonable doubt, we shall proceed to answer the attacks made upon its validity. It is first contended that the amendment is, in fact, two amendments, and thus, is violative of the requirement contained in article 19, § 1 of the New Mexico Constitution, that: "* * * If two or more amendments are proposed, they shall be so submitted as to enable the electors to vote on each of them separately * * *."

Constitutional provisions such as ours are common to at least thirty-two other states. Index Digest of State Constitutions, 16–17 (2d ed. 1959). Although we have never before been called upon to interpret or apply our constitutional enjoinder, like enjoinders in many other states have been the subject of litigation seeking their interpretation and application. See the collection of cases in the annotation at 94 A.L.R. 1510 (1935).

The constitutional amendment which is here in question first arose as two separate House Joint Resolutions. The one called for the addition to article 9, § 12 of the New Mexico Constitution of the special elections provision. The other made provision for increasing or enlarging the class of qualified voters. The Senate Rules Committee drafted a substitute resolution combining both provisions. It was this substitute resolution which was adopted by the legislature and submitted to the electorate of New Mexico at the general election held November 3, 1964. The vote was 63,791 for the amendment and 52,237 against the amendment.

Since the changes effected by the amendment consist entirely of additions to article 9, § 12, these changes are clearly demonstrated by setting forth the section as amended, with the additions underlined. The section as amended now reads:

"Sec. 12 [Municipal indebtedness—Restrictions.]

"No city, town or village shall contract any debt except by an ordinance, which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged, and which shall specify the purposes to which the funds to be raised shall be applied, and which shall provide for the levy of a tax, not exceeding twelve [12] mills on the dollar upon all taxable property within such city, town or village, sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty [50] years. The proceeds of such tax shall be applied only to the payment of such interest and principal. No such debt shall be created unless the question of incurring the same shall, at a regular election for councilmen, aldermen or other officers of such city, town or village, *or at any special election called for such purpose,* have been submitted to a vote of such qualified electors thereof as have paid a property tax therein during the preceding year, and a majority of those voting on the question by ballot deposited in a separate ballot box *when voting in a regular election,* shall have voted in favor of creating such debt. *A proposal which does not receive the required number of votes for adoption at any special election called for that purpose, shall not be resubmitted in any special election within a period of one [1] year. For the purpose, only, of voting on the creation of the debt, any person owning property within the corporate limits of the city, town or village who has paid a property tax therein during the preceding year and who is otherwise qualified to vote in the county where such city, town or village is situated shall be*

*a qualified elector."* (As amended November 3, 1964.)

From a reading of the section as it existed before the amendment, which is identical with the amended section just quoted, except for the italicized portions, it is apparent that the object of this section involved the procedures to be followed in and the limitations upon the incurring of municipal indebtedness, as well as the application of the proceeds secured from the tax levied. The particular portion of the section which has been amended relates entirely to the manner of incurring the indebtedness. The amendment provides for the submission of the question of whether or not the indebtedness shall be incurred at "special" as well as at "regular" elections, limits the time within which the question, which has been rejected by the voters at a special election, may be resubmitted at another special election, and provides that "qualified electors" at either a general or special election on the question shall be enlarged to include "any person owning property within the corporate limits of the city, town or village who has paid a property tax therein during the preceding year and who is otherwise qualified to vote in the county where such city, town or village is situated."

The only change, as to who are qualified electors, consists of making "county" as well as "municipal" residents eligible to vote on the question, so long as they are otherwise qualified.

■ The recognized purpose of a constitutional requirement, that two or more amendments shall be so submitted as to enable electors to vote on each separately, is to avoid the vice, commonly referred to as "logrolling" or "jockeying." As stated by Justice Graves in his minority opinion in State ex rel. Sch. Dist. of Memphis v. Gordon, 223 Mo. 1, 122 S.W. 1008, 1018 (1909), the reasoning of which was adopted in the later case of State ex rel. Pike County v. Gordon, 268 Mo. 321, 188 S.W. 88 (1916), and which is quoted with approval by the Arizona court in Kerby v. Luhrs, 44 Ariz. 208, 36 P.2d 549, 94 A.L.R. 1502 (1934), the particular vice in "logrolling," or the presentation of double propositions to the voters, lies in the fact that such is "inducive of fraud," and that it becomes "uncertain whether either two or more propositions could have been carried by vote had they been submitted singly."

■ Courts should be reluctant to overturn a legislative determination that a proposed amendment will accomplish but one general object or purpose. The presumptions in favor of the validity of the amendment give further support to our hesitancy in overturning the actions of the legislature and our conclusion as to the correctness of the legislative determination that the proposal actually constitutes but one amendment.

The majority of the cases, which have undertaken to construe and apply a like constitutional enjoinder, seem to have adopted the rule that a constitutional amendment, which embraces several subjects or items of change, will be upheld as valid, and may be submitted to the electorate as one general proposition, if all the subjects or items of change contained in the amendment are germane to one general object or purpose. 6 Ruling Case Law 30; Annot., 94 A.L.R. 1510, 1511; State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N.W. 785 (1882); Kerby v. Luhrs, supra; People ex rel. Tate v. Prevost, 55 Colo. 199, 134 P. 129 (1913); State ex rel. Hay v. Alderson, 49 Mont. 387, 142 P. 210 (1914); Rupe v. Shaw, 286 P.2d 1094 (Okl.1955); Hatcher v. Meredith, 295 Ky. 194, 173 S.W.2d 665 (1943); State ex rel. Board of Fund Comm'rs v. Holman, 296 S.W.2d 482 (Mo.1956); Gray v. Golden, 89 So.2d 785 (Fla.1956). The difficulty arises in the application of the rule to the concrete factual situations presented in the many cases. Winget v. Holm, 187 Minn. 78, 244 N.W. 331 (1932); Gabbert v. Chicago R.I. & P. Ry., 171 Mo. 84, 70 S.W. 891 (1902); Annot., 94 A.L.R. 1510, 1514; Note, Procedural Problems in Amending New Mexico's Constitution, 4 Natural Resources J., 151, 153 (1964).

Because of the difficulty encountered by the courts in the application of the rule, there has been a tendency to rephrase, or to enlarge upon the language of the rule, in order to demonstrate that the result reached under the particular facts of the case is consistent with a logical and correct application of the rule to those facts. It would serve no useful purpose for us to try to distinguish or to reconcile the results reached in the many cases. The factual situation presented here does not lend itself to a close analogy with any other case or cases which we have found.

■■ However, we are of the opinion that such constitutional provisions should receive a liberal, rather than a narrow or technical construction, especially where, as here, the legislature obviously considered the problem carefully, and the matter has been submitted to the people for their vote thereon. See Rupe v. Shaw, supra. Although the matter of "singleness" of object or purpose cannot be determined alone on the question of whether the provisions of one or more sections of the constitution are affected by the amendment, this should be considered. Here, we have but one portion of a single section affected, and the object or purpose of the amendment is confined to the manner in which municipal indebtedness is incurred. The fact that two points of change are involved, the fact that either might have been presented to the electorate separately, and the fact that there may be reasons why an elector might have desired one change, and not the other, are not in themselves sufficient to hold the adoption of the amendment invalid. State ex rel. Adams v. Herried, 10 S.D. 109, 72 N.W. 93 (1897); Gabbert v. Chicago R.I. & P. Ry., supra. See also State ex rel. Hudd v. Timme, supra; Hatcher v. Meredith, supra; State ex rel. City of Fargo v. Wetz, 40 N.D. 299, 168 N.W. 835, 5 A.L.R. 731 (1918).

■ We are of the opinion that the changes, whereby there were added the provisions in regard to special elections and the provisions enlarging the number of voters at both regular and special elections, relate and are germane to the general subject of *elections for the purpose of incurring municipal indebtedness* and that this was one amendment, and not, in fact, two amendments.

As above stated, the vote was 63,791 in favor of the amendment and 52,237 against it. The next question presented is whether or not the amendment was validly adopted because of the following provision in article 19, § 1, Constitution of New Mexico:

"* * * Provided, That no amendment shall apply to or affect the provisions of sections one and three of article VII hereof, on elective franchise, * * * unless it be proposed by vote of three-fourths of the members elected to each house and be ratified by a vote of the people of this state in an election at which at least three-fourths of the electors voting in the whole state and at least two-thirds of those voting in each county in the state shall vote for such amendment. (As amended November 7, 1911.)"

It is apparent that neither three-fourths of the electors voting in the whole state nor two-thirds of those voting in each county voted for the amendment. The failure to meet these particular vote requirements of the provision is urged upon us as the reason for the claimed failure of ratification.

If the amendment does "apply to or affect" the provisions of article 7, § 1 of the Constitution, then there can be no doubt that the amendment was not validly adopted. It is not contended that the amendment applies to or affects the provisions of article 7, § 3, which prohibits the restriction, abridgment or impairment of the right to vote by reason of religion, race, etc.

The pertinent part of section 1 provides:

"Every * * * citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election, except idiots, insane persons, per-

sons convicted of a felonious or infamous crime unless restored to political rights, and Indians not taxed, shall be qualified to vote at all elections for public officers. * * *"

That portion of the amendment, which it is claimed applies to or affects these provisions of section 1, is the last sentence thereof, which is as follows:

"* * * For the purpose, only, of voting on the creation of the debt, any person owning property within the corporate limits of the city, town or village who has paid a property tax therein during the preceding year and who is otherwise qualified to vote in the county where such city, town or village is situated shall be a qualified elector."

Section 1 obviously relates to the qualifications of electors at elections for public officers. However, it is urged that in Klutts v. Jones, 21 N.M. 720, 158 P. 490, L.R.A.1917A (1916), and in Johnston v. Bd. of Education, 65 N.M. 147, 333 P.2d 1051 (1959), this court held that article 7, § 1, with respect to voter qualifications, applies to more than "elections for public officers."

Our concern here is not the applicability of the qualification requirements of electors at elections for public officers to school boards, and possibly other elections, since the last sentence of the amendment here involved requires that an elector at a municipal election on the question of the creation of indebtedness must be "otherwise qualified to vote in the county." This requires that the elector in these municipal elections have the same qualifications as electors of the county at elections for public officers. However, because the elector qualifications set forth in section 1 are made applicable to municipal bond elections, it does not follow that the amendment applies to or affects the provisions of section 1.

The holding of this court in Baca v. Ortiz, 40 N.M. 435, 61 P.2d 320 (1936), concerning an absentee voting amendment, is not applicable here. In that case, the amendment was held unconstitutional because it would have allowed citizens to cast ballots at elections, though absent from the polls. It was held that this constituted an amendment of article 7, § 1 and that it failed to pass by the majority required by article 7, § 3.

▉ Nothing set forth in the amendment here involved is intended in any way to apply to or affect voter qualifications as set forth in article 7, § 1. It is true, that in addition to the qualifications expressly required by section 1, an elector at a municipal bond election under the amendment must own property within the corporate limits of the municipality and must have paid a property tax therein during the preceding year. However, qualified electors in such an election prior to the amendment must "have paid a property tax therein during the preceding year."

The fact that additional electors may now vote, in municipal bond elections, cannot be held to apply to or affect the general voter qualifications set forth in article 7, § 1. The voter qualifications expressly recited in section 1 remain exactly the same. This section makes no provision for or mention of municipal bond elections, or the qualifications of electors at such elections. The provision of the constitution relating to elector qualifications, which is affected by and to which the amendment does apply, is the provision previously contained in article 9, § 12, concerning the qualifications of electors at elections on the question of incurring municipal indebtedness. The ratification of an amendment to this provision requires only a simple majority of the votes which are cast on the question, and this majority was attained.

Some of the intervenors have challenged the constitutionality of that portion of the amendment which appears as the last sentence thereof, and §§ 14–29–1 to –4, N.M. S.A.1953, which implement that portion of the amendment.

The amendment provides:

"* * * For the purpose, only, of voting on the creation of the debt, any

person owning property, within the corporate limits of the city, town or village who has paid a property tax therein during the preceding year and who is otherwise qualified to vote in the county where such city, town or village is situated shall be a qualified elector."

The implementing legislation creates a "municipal precinct" which includes all the territory within a county. It then creates a voting division, to be known as the "non-resident voting division" which includes all the territory in the municipal precinct and not within the boundary of the municipality holding the election.

A non-resident municipal elector is defined to be a qualified elector who is registered to vote in the county in which the municipality holding the election is situated, who has paid a property tax on property located within the municipality during the year preceding the election, and who has registered with the municipal clerk his intention to vote at the municipal election.

Non-resident municipal electors desiring to vote in the municipal election must register to so vote by filing with the municipal clerk, not more than sixty days nor less than fifteen days before the election, a certificate of eligibility.

It is the duty of the municipal clerk to provide a polling place within the municipality for non-resident municipal electors, and the polling place shall be separate from any other polling place located within the municipality.

Not less than five days before the date of the election, the municipal clerk is required to place, by name in alphabetical order, in a registration book kept for that purpose, all certificates of eligibility filed by non-resident municipal electors.

This registration book shall be delivered to the judge and clerks of the election at the polling place for non-resident municipal electors in the same manner other registration books are delivered to the judges and clerks of the election in the remaining polling places, and the certificates of eligibility shall serve as the registration forms for the non-resident municipal electors desiring to vote.

The contention is that this provision of the amendment, and these provisions of the implementing legislation, create an arbitrary and unreasonable classification of qualified voters and violate the due process and equal protection guarantee of Section 1 of Amendment Fourteen of the United States Constitution. Like guarantees appear in article 2, § 18 of the Constitution of New Mexico.

 It is conceded that the State of New Mexico has the power to impose reasonable residence and other restrictions on the right to vote, so long as the restrictions are not discriminatory and are based on a reasonable classification. Prior to the amendment a qualified elector in an election to create municipal indebtedness had (1) to be a qualified elector thereof, and (2) had to have paid a property tax therein during the preceding year. Under the amendment and the implementing legislation, a qualified elector is now a person who (1) is a qualified elector of the county wherein the municipality is situated, and (2) who owns property within the corporate limits of the municipality and has paid a property tax therein during the preceding year, and (3) if a resident of the county, but not of the city, shall have filed a certificate of eligibility, as provided in § 14–29–3, N.M.S.A.1953 (pock.supp.).

 This is a case of first impression in New Mexico, and our research and the research of counsel for the parties has failed to disclose a similar case in any other jurisdiction. In Davy v. McNeill, 31 N.M. 7, 240 P. 482 (1925), although the problem involved was quite unlike that presented here, there was involved the question of the constitutionality of a classification of lands and persons. In announcing the principle to be followed in determining whether or not a classification is valid, this court stated:

"* * * The question then is: Are these classifications repugnant to the

Fourteenth Amendment to the Constitution of the United States and the like provision of our state Constitution, in the sense that there is an unreasonable or arbitrary discrimination between the two classes of owners? If the classification is reasonable, it is valid. It is in the first instance a legislative question as to whether or not the classification is reasonable; that is, could it have seemed reasonable to the Legislature even though such basis seems to the court to be unreasonable, or is it arbitrary and unjust?"

"This question is reviewed by the Supreme Court of the United States in Louisville & Nashville R. R. Co. v. Melton, 218 U.S. 36, 30 S.Ct. 676, 54 L.Ed. 921, 47 L.R.A.,(N.S.), 84, also in Orient Insurance Co. v. Daggs, 172 U.S. 557, 19 S.Ct. 281, 43 L.Ed. 552, where it is held that the Legislature of a state has necessarily a wide range of discrimination in distinguishing, selecting, and classifying; that it is sufficient to satisfy the demands of the Constitution if the classification is practical and not palpably arbitrary."

\* \* \* \* \* \*

This language was repeated and approved in Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462 (1940), wherein the court further stated the question to be:

" \* \* \* Is it so wholly devoid of any semblance of reason to support it, as to amount to mere caprice, depending on legislative fiat alone for support? If so, it will be stricken down as violating constitutional guaranties. But the fact that the legislature has adopted the classification is entitled to great weight."

\* \* \* \* \* \*

In state v. Sunset Ditch Co., 48 N.M. 17, 145 P.2d 219 (1944), it was held that a classification,

" \* \* \* must be reasonable and not arbitrary, and that the classification attempted in order to avoid the constitutional prohibition must be founded upon pertinent and real differences as distinguished from artificial ones. Mere difference, of itself, is not enough. \* \* \*"

See also Burch v. Foy, 62 N.M. 219, 308 P.2d 199 (1957); Gruschus v. Bureau of Revenue, supra.

Here the classification is that of

" \* \* \* any person owning property within the corporate limits of the city, town or village who has paid a property tax therein during the preceding year and who is otherwise qualified to vote in the county where such city, town or village is situated."

Since those required to pay the indebtedness are the owners of property within such city, town or village, this requirement of the classification bears a direct, reasonable and just relation to the thing in respect to which the classification is imposed. The limitation of electors to those property owners who are otherwise qualified to vote in the county is based upon the practical and reasonable consideration that in New Mexico the voter registration records are kept and maintained by the county clerk, are readily available for use in checking qualifications of electors, and are used by the municipalities in the county in the conduct of municipal elections. Sections 3–2–6 to –9 and § 14–8–5, N.M.S.A.1953.

Other considerations may have prompted the legislature to adopt the classification, which was approved by the voters of New Mexico, and we do not mean to suggest that other reasonable considerations for the classification do not exist, but the foregoing are sufficient to demonstrate that the classification is reasonable and practical, and is not palpably arbitrary or devoid of any semblance of reason to support it.

It follows, from our disposition of the foregoing questions concerning the validity of the amendment, that the contention of the intervenors, Blaine and Durrett, that the two changes effected by the amendment are severable, presents no issue for determination.

The defendant and some of the intervenors next contend that Chapter 300, Laws of 1965, which now appears as Chapter 14 in the pocket supplement to New Mexico Statutes Annotated, 1953 Compilation, violates

the provisions of N.M.Const. art. 4, § 16, in that it embraces more than one subject not clearly expressed in its title.

The applicable provisions of article 4, § 16 are as follows:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws; * * *."

The title to the Act, insofar as pertinent, reads:

"An act codifying and revising, pursuant to article 4, section 16 of the New Mexico Constitution, the Laws relating to cities, towns and villages; enacting a Municipal Code; authorizing the exercise of certain municipal powers by counties; and repealing chapter 14, New Mexico Statutes Annotated, 1953 Compilation * * *."

Appellee urges this municipal code is valid because: (1) it does not embrace more than one subject, not clearly expressed in its title, and (2) it is a codification or revision of the law, which is expressly excepted from the "one subject" requirement.

This section of our constitution was first construed and applied in State v. Ingalls, 18 N.M. 211, 135 P. 1177 (1913). The principles therein announced were reaffirmed in Davy v. McNeill, supra, wherein the comprehensive act there involved provided for the organization of irrigation districts. We quoted with approval the following from Cooley, Constitutional Limitations (7th Ed.) 205:

"The general purpose of these provisions (referring to constitutional provisions) is accomplished when the law has but one general object which is fairly indicated by its title.

\* \* \* \* \* \*

"The generality of the title is therefore no objection to it so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment could be considered as having a necessary or prop-

er connection. The Legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it." * * *

This was followed by a quotation from 25 R.C.L. title "Statutes," § 99, part of which quotation is that:

"It is primarily for the Legislature to determine whether the title of an act shall be broad and general or narrow and restricted. The greater and broader the title, the greater the number of particulars or of subordinate subjects which may be embraced within it."

\* \* \* \* \* \*

■ In the case of Ballew v. Denson, 63 N.M. 370, 320 P.2d 382 (1958), a like attack was made on Chapter 7, Laws 1933, entitled, "An act relating to the foreclosure of judgment Liens." In disposing of the claim that the title of the act did not clearly express the subject thereof, and that it embraced more than one subject, we stated:

"* * * The primary purpose of the constitutional provision is to prevent fraud or surprise by means of concealed or hidden provisions in an act which the title fails to express. * * * This broad statement [the title to the act] clearly expresses its subject, the foreclosure of judgment liens. On reading the various provisions of the Act, we find disclosed a single subject, that pertaining to foreclosure of judgment liens."

■ A reading of the numerous provisions of the Act here in question discloses that they all relate to the one broad but single subject, namely, "laws relating to cities, towns and villages," or a "municipal code." For other cases in which a like result has been reached, see State ex rel. Taylor v. Mirabal, 33 N.M. 553, 273 P. 928, 62 A.L.R. 296 (1928); Central of Georgia Ry. Co. v. State, 104 Ga. 831, 31 S.E. 531, 42 L.R.A. 518 (1898); Cook v. Marshall County, 119 Iowa 384, 93 N.W. 372 (1903); Johnson v. Harrison, 47 Minn. 575, 50 N.W. 923 (1891); Widney v. Hess, 242

Iowa 342, 45 N.W.2d 233 (1950); State v. Pete, 206 La. 1078, 20 So.2d 368 (1944); McClain v. Commonwealth, 189 Va. 847, 55 S.E.2d 49 (1949); Macke v. Commonwealth, 156 Va. 1015, 159 S.E. 148 (1931); Ex parte Jimenez, 159 Tex. 183, 317 S.W.2d 189 (1958).

Nothing stated by us in Tindall v. Bryan, 54 N.M. 112, 215 P.2d 354 (1949), or in Johnson v. Greiner, 44 N.M. 230, 101 P.2d 183 (1940), relied upon by defendant and intervenors, compels or even indicates a different result.

We are also of the opinion that the amendment was valid because it is a codification and revision of the laws relating to cities, towns, and villages into a municipal code as expressly stated in the title. In addition to collecting and rearranging the prior statutes relating to cities, towns and villages, some changes therein have been made, including the omission of some matters contained in the prior statutes and the addition of some new matters.

We have never had occasion to define what is meant by a codification of laws. Black's Law Dictionary 324 (4th ed. 1951) defines codification as the process of correcting and arranging the laws of a county or state into a code. In 1 Bouvier's Law Dictionary 508 (3rd rev. 1914) there appears a quote from a paper of Judge Clark (rep't. Ga.State Bar Ass'n. 1890), in which he concludes that codes are substantially of three kinds. This quote is in part as follows:

"Third.—To take a yet greater latitude, and, without changing the existing system of laws, to add new laws, and to repeal old laws, both in harmony with it, so that the code will meet present exingencies and, so far as possible provide for the future; and this is real codification."

We are inclined to agree with the view expressed by Judge Clark, which is in accord with the objectives sought to be attained by a code or codification of the law pertaining to a general subject matter.

Our territorial Supreme Court did have occasion to define and explain what is meant by a revision of statutes. In Cortesy v. Territory, 7 N.M. 89, 32 P. 504 (1893), the following was quoted with approval from Sutherland on Statutory Construction:

"* * * A revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a corrected or improved form. The restatement may be with or without material change. * * *"

■ Thus a revision of statutes implies one, more or all of the following: (1) a re-examination of existing statutes; (2) a restatement of existing statutes in a corrected or improved form; (3) the restatement may or may not include material changes; (4) all parts and provisions of the former statute or statutes that are omitted are repealed; (5) the revision displaces and repeals the former law as it stood relating to the subject or subjects within its purview. Becker v. Green County, 176 Wis. 120, 184 N.W. 715, 186 N.W. 584 (1921). See also Fort Worth & D. C. Ry. Co. v. Welch, 183 S.W. 2d 730 (Tex.Civ.App.1934); Elite Laundry Co. v. Dunn, 126 W.Va. 858, 30 S.E.2d 454 (1944); American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S.W. 1019 (1922); Alexander v. Highfill, 18 Wash.2d 733, 140 P.2d 277 (1943); Tennessee Min. & Mfg. Co. v. Anderson County, 173 Tenn. 497, 121 S.W.2d 543 (1938).

Intervenors, Torres and McBride, contend that §§ 14–29–1 to –9, N.M.S.A.1953, and particularly §§ 14–29–1 to –4, N.M.S.A. 1953, are in conflict with and repugnant to the clear meaning and requirements of article 7, § 1 and article 9, § 12 [as amended] of the Constitution of New Mexico.

The substance of the particular sections of the statutes here involved is set out above.

In addition to that portion of article 7, § 1 of the Constitution of New Mexico above-quoted, the only other portion thereof,

which is pertinent to the question now presented, is the provision that:

\* \* \* \* \* \*

"The legislature shall have the power to require the registration of the qualified electors as a requisite for voting, and shall regulate the manner, time and places of voting. \* \* \*"

The particular portion of the amendment to article 9, § 12, which is herein involved is the last sentence thereof, and which is quoted above.

It is urged that the words "and who is otherwise qualified to vote in the county," appearing in the last sentence of the amendment necessarily have reference to the voter qualification provisions of article 7, § 1. Although it is not contended that we have expressly held that these voter qualification provisions apply to elections other than those for public officers, it is urged that we have at least so implied in Klutts v. Jones, 20 N.M. 230, 148 P. 494 (1915); Klutts v. Jones, 21 N.M. 720, 158 P. 490, L.R.A. 1917A 291 (1916); State ex rel. Board of County Com'rs, etc. v. Board of County Com'rs., 59 N.M. 9, 277 P.2d 960 (1954); and in our discussion of the meaning and differences between the terms "qualified elector" and "qualified to vote" in Chase v. Lujan, 48 N.M. 261, 149 P.2d 1003 (1944). Although there may be some doubt as to the validity of the claimed implication in this regard to be drawn from our decisions in these cases, we are of the opinion that the language of the amendment does have reference to the voter qualification requirements of article 7, § 1. No other section of our constitution defines voter qualifications.

It is further urged that we have repeatedly held that article 7, § 1 requires a voter to personally present himself to vote in the precinct of his residence. Thompson v. Scheier, 40 N.M. 199, 57 P.2d 293 (1936); Baca v. Ortiz, 40 N.M. 435, 61 P.2d 320 (1936); Chase v. Lujan, supra; Arledge v. Mabry, 52 N.M. 303, 197 P.2d 884 (1948); State ex rel. Board of County Com'rs etc. v. Board of County Comm'rs, supra; State ex rel. West v. Thomas, 62 N.M. 103, 305 P.2d 376 (1956).

From these two premises it is argued that we must conclude that the legislation, creating the "municipal precinct" and requiring these intervenors, Torres and McBride, to cast their votes in a precinct or at a polling place other than in the precinct in which they reside for county elections, is in direct conflict with and repugnant to the clear meaning of article 7, § 1 and of the amendment to article 9, § 12.

They further argue under a separate point that the provisions of the amendment are self-executing, so that they may properly vote on the creation of municipal indebtedness in the precinct of their residence. By precinct of their residence they mean their regular voting precinct for general elections.

We do not agree that the provisions of article 7, § 1 provide that a person otherwise qualified to vote can have but one place to vote in all elections, or that he can be a resident of but one precinct with fixed territorial boundaries. Article 7, § 1 expressly directs that the legislature "shall regulate the manner, time and places of voting." There is nothing in this directive which says that voting precincts must be geographically identical for all elections, or that an elector is entitled to cast his vote at the same place in all elections. Section 3–2–1, N.M.S.A. 1953 makes provisions for the division of precincts into election districts, the fixing of a polling place in each district, and the consolidation of precincts or voting divisions under certain circumstances.

Section 3–2–3.1, N.M.S.A.1953 provides:

"For all purposes relating to any and all school elections, including school bond elections, all the area within the exterior boundaries of any school district, as now defined or as may hereafter be created or altered, is hereby declared and defined to be one [1] precinct, whether in one [1] or more counties."

Section 3–2–3.2, N.M.S.A.1953 provides for the consolidation of voting divisions

within a precinct in the case of state-wide or county-wide special elections.

 We find nothing in our constitution which limits the legislature to the establishment of one precinct or voting division for all elections. We are of the opinion that our constitution expressly contemplates and directs that the legislature shall provide the proper machinery for conducting elections for different purposes and that the provisions contained in the amendment was not self-executing. See Cooley, Constitutional Limitations 167–69 (8th ed. 1927).

The defendant and some of the intervenors next contend that §§ 14–29–1 through 14–29–9, N.M.S.A.1953 (1966 Supp.), constitute special legislation in violation of article 4, § 24 of the New Mexico Constitution.

Their argument seems to be that the statutory requirement, that non-resident municipal electors must vote at a single polling place within the municipality, constitutes special legislation which regulates precinct affairs, and violates the provision of article 4, § 24 that "The Legislature shall not pass local or special laws * * * Regulating county, precinct or district affairs; * * *."

They cite as authorities for their position the cases of State v. Sunset Ditch Co., supra, and State ex. rel. Board of Education of Village of Roy v. Saint, 28 N.M. 165, 210 P. 573 (1922).

State v. Sunset Ditch Co., supra, involved a legislative classification based wholly upon a time element, when the time selected had no reasonable relation to the object of the legislation, and such was held to violate section 1 of the Fourteenth Amendment to the Constitution of the United States and article 2, § 18 of the Constitution of New Mexico.

In State ex. rel. Board of Education v. Saint, supra, it is expressly stated that it was not necessary to consider the claimed violation of article 4, § 24.

 The application of the legislation here is not confined to any precinct and is not confined to any particular affair or affairs of a precinct. It applies equally to all municipalities and to all counties in New Mexico. A statute relating to persons or things as a class is a general law. A special statute, on the other hand, is one that relates to particular persons or things 'of a class, or is made for individual cases, or for less than a class of persons or things requiring laws appropriate to its peculiar condition and circumstances. State v. Atchison T. & S. F. Ry., 20 N.M. 562, 151 P. 305 (1915); Scarbrough v. Wooten, 23 N.M. 616, 170 P. 743 (1918). If a statute is general in its application to a particular class of persons or things and to all of the class within like circumstances, it is a general law. Albuquerque Met. Arroyo Flood Con. A. v. Swinburne, 74 N.M. 487, 394 P.2d 998 (1964); Davy v. McNeill, supra.

 It is our opinion that the statutes here in question do not fall within the constitutional prohibition against special or local laws regulating precinct affairs.

In view of our disposition of the questions concerning the validity of the amendment and the implementing legislation, it follows that defendant's last contention, that she may not spend public monies for the publication of notice of holding an illegal election, must fall.

It follows from what has been said that the judgment of the trial court should be affirmed.

It is so ordered.

CHAVEZ, C. J., and MOISE and CARMODY, JJ., concur.

NOBLE, Justice (dissenting).

I agree that generally the people of a state are supreme in determining what the state constitution shall be and that in the exercise of their sovereign power they may alter or amend their constitution as they choose. The New Mexico Constitution, however, prescribes the method by which it may be altered or revised. Such provisions regulating its own amendment are mandatory, and a strict observance of every substantial

requirement is essential to the validity of an amendment thereto. Hillman v. Stockett, 183 Md. 641, 39 A.2d 803; Tipton v. Mitchell, 97 Mont. 420, 35 P.2d 110; Boyd v. Olcott, 102 Or. 327, 202 P. 431.

I agree with the general principle enunciated in the majority opinion that every reasonable presumption is to be indulged in favor of the legality of an amendment to the state's fundamental law. The principal difficulty with which we are faced stems not so much from a statement of general legal principles but in their application to the concrete factual situation. We can all be entirely in sympathy with an attempt to permit non-resident property owners, upon whom much of the burden of municipal bonded indebtedness must eventually fall, to have a voice in determining whether such bonds shall be issued. But we are, nevertheless, bound by the limitations and restrictions imposed by the framers of our constitution.

The majority must concede that except for the 1964 amendment to article IX, § 12 of the State Constitution, non-residents could not vote in municipal bond elections. The validity of that portion of ch. 300, Laws 1965 which is the subject of this appeal depends upon the validity of the 1964 amendment. In my view, the majority determination that the amendment was validly adopted is erroneous. First, the amendment violates the restrictions of article XIX, § 1, reading: "If two or more amendments are proposed, they shall be so submitted as to enable the electors to vote on each of them separately * * *" Secondly, because the amendment failed to be ratified by a vote of at least three-fourths of the electors voting in the whole state and of at least two-thirds of those voting in each county, it is prohibited by article XIX, § 1 of the New Mexico Constitution.

I think the majority has incorrectly applied the general principles of construction in this instance. This single amendment sought to change both the time at which bond issues could be submitted to a vote of the people and the eligibility of those who may vote on the question. The issue before us is not whether such a constitutional provision shall receive a liberal rather than a strict, narrow or technical construction, nor does the fact that the legislature submitted the amendment as a single question give it greater efficacy. The majority aptly point out that as originally proposed in the legislature there were two separate amendments, one permitting municipal bond issues to be submitted at special as well as at general elections, and the other authorizing certain non-resident property owners to vote on the question of the bond issue. It must be agreed that there are reasons why an elector might have desired one change but not the other. This exact situation was presented to the Supreme Court of Arizona in Kerby v. Luhrs, 44 Ariz. 208, 36 P.2d 549, 94 A.L.R. 1502, where the Arizona Supreme Court, while holding that for other reasons not present in the instant case the submission of three propositions as a single constitutional amendment did not invalidate it, nevertheless condemned such submission generally. That court's language is particularly apt under the circumstances of this case:

"These propositions are so essentially dissimilar that it is obvious that the legislators, who must pass thereon, will probably be divided in their opinion as to their merit. Some of them may earnestly desire proposition A, while being opposed, though in a lesser degree, to B and C. Others consider the enactment of proposition B of paramount importance while objecting to A and C, while the members of a third group are willing to sacrifice their convictions on A and B for the sake of securing C. The original framers of the three propositions, realizing this situation, place them all in one measure, so that a legislator must vote either yes or no on the measure as a whole. He is thus forced, in order to secure the enactment of the proposition which he considers the most important, to vote for others of which he disapproves. Such practices have been universally con-

demned by impartial students of public affairs, and yet they are notoriously prevalent in all Legislatures. Indeed, so true is this, that our Constitution permits the Governor to veto separate items of an appropriation bill, without rejecting the whole bill. [New Mexico does likewise.] * * * But, if these actions are evil in the Legislature, where they deal only with statutes, much more are they vicious when constitutional changes, far-reaching in their effect, are to be submitted to the voters. * * *"

As pointed out by Justice Lockwood in the Arizona case, the principle involved is well summed up by the dissent of Justice Graves in State ex rel School Dist. of Memphis v. Gordon, 223 Mo. 1, 122 S.W. 1008, 1018, which was later adopted as the reasoning of the majority in State ex rel. Pike County v. Gordon, 268 Mo. 321, 188 S.W. 88. It was there said:

"However, before going to the holding of the courts of this state, it might be well to submit the general proposition of law resulting from the examination of all cases bearing upon the question. In 21 American and English Encyclopedia of Law (2d Ed. 47) it is said:

'Two propositions cannot be united in the submission so as to have one expression of the vote answer both propositions, as voters might be thereby induced to vote for both propositions who would not have done so if the questions had been submitted singly.' "

Many of the decisions relied upon by the majority upheld the validity of the amendment against a contention that it contained two separate propositions upon the ground that the two questions were so interrelated that one was not desirable without the other, or that to adopt one and reject the other would lead to an absurd result.

This is not a case where the two changes are so intimately connected that the propriety of both changes taking place, or of neither taking place, is so apparent that to provide otherwise would be absurd.

Under the facts in the instant case, to adopt one and reject the other would not result in absurdity. This principle is, to my mind, almost conclusive proof that two separate propositions were contained in the single amendment submitted to the people, and that if they had been separately submitted, one might well have been adopted and the other rejected. The two propositions here clearly had different objects and purposes in view, not dependent upon or related to each other. In my view, the two changes sought in the instant case cannot be said to have a single controlling purpose.

Throughout the entire history of this State, article VII, § 1, has provided the minimum eligibility of electors at all elections. The requirements are:

"Every * * * citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election, * * * shall be qualified to vote at all elections for public officers. * * *"

Although the majority disavow holding this section applied only to elections for public officers, their conclusion, of necessity, so implies.

The prior decisions of this court are unanimously in disagreement with any reasoning that article VII, § 1 does not control municipal bond elections because it is not one calling for the election of public officers.

A school district election to determine whether bonds shall be issued for the purpose of the construction of school buildings has been held to be an election within the purview of article VII, § 1 of the New Mexico Constitution. Klutts v. Jones, 21 N.M. 720, 158 P. 490; Roswell Municipal School Dist., etc. v. Patton, 40 N.M. 280, 58 P.2d 1192; Johnston v. Board of Education, 65 N.M. 147, 333 P.2d 1051. The words "other elections" as used in article VII, § 1 of the State Constitution, separating school district elections from "other

 

elections," was held to embrace a municipal bond election, notwithstanding the contrary provisions of 1929 Comp., § 120–703. Roswell Municipal School Dist., etc. v. Patton, supra. Furthermore, ch. 196, Laws 1947 (since repealed) permitted annexation by a county of parts of an adjoining county after a majority vote of the electors of the affected area, but article VII, § 1 of the State Constitution was held applicable in State ex rel. Bd. of County Com'rs, etc. v. Bd. of County Comm'rs, 59 N.M. 9, 277 P.2d 960. It is thus clear that the eligibility requirements for electors provided by article VII, § 1 of the State Constitution are not limited to elections for public officers, as must be held by the majority, but that, on the contrary, these constitutional restrictions have been repeatedly held by this court to be applicable to such municipal elections as the one with which we are now concerned.

The language, "offers to vote," as used in article VII, § 1, supra, contemplates the personal presence of the voter, Baca v. Ortiz, 40 N.M. 435, 61 P.2d 320, and requires the manual delivery of the ballot by the voter in the precinct in which he resides. Thompson v. Scheier, 40 N.M. 199, 57 P.2d 293. In legal intendment, the requirement of ch. 300, Laws 1965, providing that certain non-resident property owners may cast their ballots at a special voting place within the municipality, is fatal to the statute because such voters do not appear personally to cast their ballots within the precinct of their residence as required by article VII, § 1 of the State Constitution.

This court having repeatedly held that article VII, § 1 of the State Constitution requires an elector in all elections, including municipal bond elections, to manually cast his ballot within the precinct in which he resides, the 1964 amendment to article IX, § 12, which the majority says authorizes certain non-residents to cast ballots within precincts in which they do not reside affected the requirements of article VII, § 1. This can only be accomplished by a constitutional amendment ratified by a vote of at least three-fourths of the electors voting in the whole state and by at least two-thirds of those voting in each county of the state. New Mexico Constitution, article XIX, § 1. It is agreed that the 1964 amendment was not so ratified. The 1964 amendment to article IX, § 12, was not validly adopted and, accordingly, cannot affect the residence requirement of article VII, § 1.

Being convinced that the 1964 amendment to the State Constitution, purporting to change the qualification of electors so as to permit certain non-residents to vote in municipal bond elections, and also allowing special elections to be held for that purpose, is prohibited by other constitutional requirements, I must dissent from the majority.